**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------- X

WHOLE HEMP COMPANY LLC d/b/a
FOLIUM BIOSCIENCES and KASHIF SHAN,

                Plaintiffs,

     v.

TERI BUHL,

                Defendant.

--------------------------------------- X

Case No.:19-cv-10073

**VERIFIED COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs Whole Hemp Company LLC d/b/a Folium Biosciences ("Folium") and Kashif

Shan ("Shan") (collectively, "Plaintiffs"), by and through their undersigned counsel, for their

Complaint against Defendant Teri Buhl ("Buhl" or "Defendant"), hereby allege as follows:

## STATEMENT OF THE CASE

1.     This case is about an ongoing coordinated campaign by Defendant Teri Buhl and

her unknown financial backers to damage Plaintiffs' business and reputation by defaming and

disparaging Plaintiffs' business practices and falsely accusing several of Plaintiffs' employees of

various unlawful acts.  Buhl has intentionally defamed Plaintiffs by, *inter alia*, publishing false

statements regarding Folium's business practices and financial dealings, harassing Folium

employees to seek information and comments about plainly-fabricated accusations from

disgruntled former employees, and contacting Folium's customers to outrageously allege that its

products cause severe sickness and death.  Plaintiffs seek injunctive relief and money damages, in

an amount exceeding $75,000, for the severe harm caused by Buhl's defamatory statements and

her and her accomplices' malicious and unlawful actions against Folium, Shan, and other Folium

executives and employees.

2.      Buhl refers to herself as "a professional financial investigative journalist," when in reality she appears to be nothing more than a paid shill and hack writer with a long and well-established history of publishing defamatory statements in an effort to raise money for herself, increase internet traffic to her website, and to benefit her unnamed benefactors – short sellers and pump-and-dump artists with whom she is engaged, directly or indirectly, in the manipulation of stocks for financial gain.  Upon information and belief, Buhl has a bench warrant out for her arrest in Rhode Island for failing to pay restitution for felony check fraud, and she recently served time in Connecticut state prison for misdemeanor harassment and breach of peace arising out of the publication of private and scandalous material on the internet.  She is currently and has been a defendant in multiple civil actions for her defamatory publications.

3.      Buhl's campaign of defamation and disparagement against Plaintiffs began at the latest, on or about August 29, 2019, when an article she wrote was published on Cannabis Law Report's website.  In the article, which describes allegations made by a former employee of Folium in a lawsuit filed by the former employee in Colorado state court, Buhl defamed and disparaged Plaintiff Shan by, among other things, falsely alleging that Shan made statements to Folium staff that "his wife is good for hiding money."  Although the article purports to cite an unnamed source ("someone who worked with the company") for this inflammatory allegation, the article is, in truth, little more than a sensational attempt to besmirch Plaintiffs based on double-hearsay and unfounded speculation.

4.      Following publication of this article, Buhl has continued her campaign to falsely and maliciously accuse Plaintiffs of various unlawful acts, has published false or intentionally misleading statements on her social media pages, and has repeated fabrications and falsehoods by unnamed, former employees of Folium in harassing calls and communications to a number of

current Folium employees and customers, all under the guise of working on an additional "story"
about the Plaintiffs.  Among other unlawful actions, Buhl has defamed Plaintiffs with the
following false statements:

a.  On or about August 29, 2019, Buhl wrote in an article posted on Cannabis
Law Report's website: "According to a person who has worked with the
company Shan has allegedly made comments to staff that 'his wife is good for
hiding money'";

b.  On or about September 22, 2019, Buhl left a voicemail for Heidi Hill, founder
of Holistic Hound, a customer of Folium, stating: "two former employees …
said you had bought some of [Folium's] wholesale CBD products and that it
had caused death or severe sickness in some dogs that had bought your
product";

c.  On or about October 10, 2019, Buhl posted on Twitter: "My story research
shows they [Folium] were not vertically integrated";

d.  On or about October 10, 2019, Buhl called Duncan Schmidt, an employee at
Holistic Hound, a customer of Folium, and alleged that a Holistic Hound
product containing Folium product was responsible for the death of a dog and
that Folium falsified Certificates of Analysis (COAs);

e.  On or about October 16, 2019, Buhl e-mailed Scott Dowty, Chief Executive
Officer of Australis Capital Inc., stating: "The two [people] I spoke with at
Folium say Kash lied in [an April 3rd] press release with the intention to
create buzz so that the $AUSA stock price would go up."

Each of the above statements are false and/or create the false impression that the factual

statements contained therein are true.  They are not.  Buhl knew or should have known that the allegations and statements described above were false and defamatory.  She recklessly ignored readily available public information, and she made false and disparaging statements about Plaintiff Shan's honesty both publicly and privately.  Because Buhl charged Plaintiffs with serious crimes regarding the falsification of certificates and the intentional manipulation of publicly-traded stock, Buhl's statements are defamatory *per se*.  Buhl's actions also constitute tortious interference with prospective economic advantage and injurious falsehoods.

5.     Upon information and belief, Buhl was hired by disgruntled former Folium employees and/or their litigation counsel in conjunction with lawsuits brought by former Folium employees against Folium, Shan, and Quan Nguyen (Senior Vice President of Business Development for Folium) in Colorado state district court.  Buhl's aforementioned actions and those described in more detail below appear to be part of a coordinated campaign to defame Plaintiffs, to interfere with Plaintiffs' current contractual and prospective business relationships, and to damage the property interests of Plaintiffs.

6.     Plaintiffs bring this action to vindicate their rights and reputation under the law. In addition to the substantial reputational harm caused by Buhl's false allegations in the article published on Cannabis Law Report, calls to Plaintiffs' customers, and social media posts, Plaintiffs have been damaged by having to expend substantial resources to respond to Buhl's false statements and in having their business and professional reputations disparaged in the marketplace.  Buhl's statements have harmed and threatened further harm to Plaintiffs' relationships with investors, marketing partners, and the livelihood of Folium's over 200 employees.  By falsely suggesting and repeating lies that various Folium employees have committed criminal acts, Buhl's defamatory statements have also decreased Folium's value as a

going concern and threaten to further decrease Folium's value in any potential future transaction.

7.      Based on the ongoing harm and likelihood of further irreparable harm in the future, Plaintiffs seek, in addition to monetary damages, a preliminary injunction and a permanent injunction to put an end to Buhl's malicious tactics.

## PARTIES

8.      Plaintiff Folium is a limited liability company organized and existing under the laws of the State of Colorado with its principal place of business at 615 Wooten Road, Suite 110, Colorado Springs, Colorado 80915.  Folium is the largest known vertically-integrated producer, manufacturer, and global distributor of hemp derived cannabinoids ("CBD") in North America.

9.      Plaintiff Shan is an individual with a principal place of business and residence in Colorado.  Shan is the Chief Executive Officer and Founder of Folium.

10.     Upon information and belief, Defendant Buhl is an individual with a principal place of business and residence on York Avenue in New York, New York. According to a declaration Buhl filed this month in an unrelated matter in the Southern District of Florida (in which Buhl is also being sued for defamation), she has been a full time resident of New York City for the past three years.  *See Kesner v. Barron's, Inc. et al.*, S.D. Fla. Case No. 19-cv-61370-RS, Dkt. No. 47, at ¶ 2.  Buhl states that she has worked as a freelance journalist for over a decade.  *Id.* at ¶ 8.  She currently reports for Cannabis Law Report, and also writes and publishes articles to her website at http://www.teribuhl.com/.  According to Buhl, her "reporting concentrates on covering wrong doing in the financial industry."  *Id.* at ¶ 13.  Some of her reporting is on her website, (teribuhl.com), which Buhl admits is "funded through advertisement" and "reader funded donations."  *Id.* at ¶ 16.  Although Buhl claims that "[she] doesn't take ads from the subject of [her] stories" and is "not paid by the subjects of stories to

write about them," (*id.*) she does not appear to deny that she regularly obtains funding from: (a) short-sellers who can capitalize on fluctuations in the stock prices of the "targets" of her "stories," or (b) competitors of the "targets" who have an interest in harming these "targets" of her "stories." Buhl regularly solicits "donations" through her twitter posts for her "reporting."

11.     Buhl is no stranger to court proceedings.  She has been the subject of numerous allegations of misconduct, including, *inter alia*, a number of defamation claims filed against her in various jurisdictions around the country.  *See, e.g.*, *Imbruce v. Buhl et al.*, D. Conn. Case No. 3:15-cv-00554-JAM; *Honig v. Ladd et al.*, M.D. N.C. Case No. 1:17-cv-00184-CCE-LPA; *Kesner v. Barron's, Inc. et al.*, S.D. Fla. Case No. 19-cv-61370-RS.

12.     Buhl's actions have not only brought her to the courts as a civil litigant, but also as a criminal defendant.  In or around 2002, she was arrested and charged in Rhode Island with felony check fraud, and upon information and belief, she pled guilty to at least one felony charge and was ordered to pay restitution.  As of the filing of this Complaint, Buhl appears to have an outstanding balance due of $8,020 on her restitution payments, and has a bench warrant out for her arrest.  *See* https://publicportal.courts.ri.gov/app/RegisterOfActions/#/8331041/anon/portal embed.  More recently, Buhl was found guilty on misdemeanor charges of harassment and breach of peace, and was sentenced to 30 days in jail, one-year probation, and a strict order not to interact with the victim's family by a Connecticut state court as a result of Buhl posting portions of her then-boyfriend's teenage-daughter's private journals concerning highly intimate personal matters on Facebook.  *See State v. Buhl*, 321 Conn. 688 (2016).

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (diversity jurisdiction) because the amount in controversy exceeds the sum or value of

$75,000, exclusive of interests and costs, and the action is between citizens of different states.

14.      This Court has personal jurisdiction over Buhl pursuant to New York CPLR § 301 because Buhl is a resident of New York.  Alternatively, jurisdiction is predicated on CPLR § 302(a)(1).

15.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Buhl resides in New York, New York and, in her own words, "can only afford to defend [herself] … in the Sothern [sic] District of New York."  *See Kesner v. Barron's, Inc. et al.*, S.D. Fla. Case No. 19-cv-61370-RS, Dkt. No. 47, at ¶ 22.  Alternatively, venue is predicated on 28 U.S.C. §§ 1391(b)(2) and/or (b)(3) because a substantial part of the defamatory statements and tortious acts committed by Buhl which give rise to the Plaintiffs' claims occurred in New York.  New York law applies to this action.

## STATEMENT OF FACTS

### Folium Biosciences: An Industry Innovator

16.      Folium is the largest known vertically-integrated producer, manufacturer, and global distributor of hemp derived CBD in North America.  The company is a business-to-business, bulk, and wholesale supplier of hemp-derived THC free (0.0%) CBD oil, water-soluble technology, and CBD products for human wellness and animal health.

17.      Folium was founded in 2014 in Colorado Springs, Colorado by Shan.  It is fully licensed and registered with the Colorado Department of Agriculture, and all of its Phytocannabinoid-Rich (PCR) hemp is grown in compliance with the landmark Agricultural Improvement Act of 2018, also known as the 2018 Farm Bill.

18.      Upon information and belief, Folium is the world's first hemp company issued a Certificate of Health and Free Sale and a Manufactured Food Establishment License by the

Colorado Department of Public Health & Environment, certifying its 0.0% THC (non-detectable THC) products meet the requirements for human consumption as well as legal distribution.

19.     Folium has over 300,000 sq. ft. of manufacturing space in southern Colorado, which supports processing, extraction, and purification operations.  Folium currently employs more than 200 people.

20.     Earlier this year, Folium successfully acquired FeyeCon Development and Implementation, BV and FeyeCon, BV (collectively, "FeyeCon"), located in Amsterdam. FeyeCon is one of Amsterdam's first licensed cannabis researchers and developers which designs and fabricates large scale processing equipment and supercritical $CO_2$ extraction machinery.

21.     Also this year, Folium, in partnership with CannaSecure Alliance, announced the formation of Folium Finance, the industry's first complete financial solutions program, designed to deliver a variety of services, including, *inter alia*, supply chain financing, competitive CBD merchant processing services, traditional bank accounts, CBD/hemp-friendly credit lines, property and casualty insurance, and employee insurance benefits for Folium's customers.

22.     Most recently, Australis Capital Inc. invested $3,000,000 in Folium in a private offering investment.

23.     As the industry's premier hemp company for manufacturing, processing, and distributing phytocannabinoid-rich bulk CBD oil, water-soluble technologies, and finished food products, Folium has attracted prospective outside buyers for the company.

24.     Upon information and belief, Buhl is being funded by former employees of Folium to interfere with the potential acquisition and purchase of Folium and to depress Folium's value.

**The Conspiracy to Defame, Devalue, and Destroy Folium**

25.     Upon information and belief, Buhl was commissioned by former employees of Folium Dale Takio, Juanita Ramos, and Brandon Young (collectively, the "Colorado Litigants"), their attorneys Fortis Law Partners LLC and Henry M. Baskerville, Esq. (collectively, "Fortis Law"), and/or Ryan Lewis (also a former Folium employee) to comment on and write about Plaintiffs in a false and negative manner.

26.     The Colorado Litigants are all disgruntled, former Folium employees who are suing Folium, Shan, and/or Nguyen in Colorado state district court in El Paso County, CO by and through their counsel, Fortis Law.  *See Takio v. Whole Hemp Company LLC et al.*, Case No. 2019CV31992 (Colo. Dist. Ct., El Paso Cty); *Ramos v. Whole Hemp Company LLC et al.*, Case No. 2019CV32196 (Colo. Dist. Ct., El Paso Cty); *Young v. Whole Hemp Company LLC et al.*, Case No. 2019CV32242 (Colo. Dist. Ct., El Paso Cty).  The Colorado Litigants were all terminated for cause by Folium,[1] and are now each wrongfully claiming that they are entitled to an equity interest in the company, among other baseless and frivolous allegations against Folium and its executives.

27.     The Cannabis Law Report article written by Buhl that is mentioned above is, in part, about the *Takio* complaint.  *See* https://cannabislaw.report/lawsuit-alleges-secret-cash-payments-by-colorado-cbd-company-ceo-kashif-shan/.

28.     Ryan Lewis is the former Vice President of Global Sales for Folium.  Lewis was terminated for cause by Folium on or about January 12, 2018.  Upon information and belief, Lewis is now the Vice President of Sales and Head of Global Sales for GCX, LLC, a direct

---

[1] Takio was terminated on or about June 18, 2019, Ramos was terminated on or about August 28, 2018, and Young was terminated on or about April 23, 2018.

competitor of Folium.  Upon information and belief, Global Cannabinoid, Inc. is an alter ego or

predecessor of GCX, LLC.  Upon information and belief, Lewis and Baskerville are close

friends.  Fortis Law also previously represented Lewis in a civil litigation.

29.     Upon information and belief, at least one or more of the Colorado Litigants, Fortis

Law, and/or Lewis are compensating Buhl to intentionally and maliciously defame Plaintiffs in

order to negatively affect Folium's business and revenues, decrease the valuation of Folium,

and/or interfere with the potential acquisition and purchase of Folium.

**The Malicious and Unlawful Actions Against and Towards Folium**

30.     On or about August 29, 2019, Buhl published an article on Cannabis Law

Report's website, at https://cannabislaw.report/lawsuit-alleges-secret-cash-payments-by-

colorado-cbd-company-ceo-kashif-shan/, that damaged and defamed Plaintiffs and jeopardized

their substantial investments in the Folium business.  Appearing with the sensational (and

grammatically incorrect) headline "Lawsuit Alleges Secret Cash Payments. By Colorado CBD

Company CEO, Kashif Shan", the article describes the allegations in the lawsuit filed by former

Folium employee Dale Takio in Colorado state court, *Takio v. Whole Hemp Company LLC et al.*,

Case No. 2019CV31992, and provides some background on Folium, but is transparently biased

in its description of the dispute, claiming that Plaintiff Shan "allegedly tried to cut [Takio] out of

his promised equity in the privately held company", and goes well beyond the allegations

contained in the *Takio* complaint.  Despite referencing the fact that the state court suit quotes

emails between Plaintiffs and Takio relating to negotiation of an equity interest for Takio, and

that no signed contract was attached to the filings, Buhl implies that Takio is a member of

Folium, and thus entitled to an equity stake in the company.  While she briefly mentions the

Federal Court complaint filed by Folium against Takio which seeks a declaration that Takio has

no contract with Folium that would entitle him to any equity interest, she essentially ignores the well-documented timeline of evidence presented in that pleading and instead quotes heavily from the *Takio* complaint in a transparent attempt to smear and defame Plaintiffs.

31.    In the article, Buhl states that the "juiciest part of the [*Takio*] lawsuit takes a look [sic] Shan's self-dealing and negligence, according to first-hand knowledge by Takio."  Buhl's biased description presumes the veracity of these unproven allegations based on pure speculation.  Buhl knowingly creates the misleading impression that Takio has first-hand knowledge of Plaintiff Shan's purported "self-dealing and negligence."  The article then cites allegations from the *Takio* complaint of alleged payments to Shan, Shan's wife, and Nguyen and quotes the allegation that "[o]ther Folium members, such as Takio did not receive similar distributions."  Despite mentioning Shan's public statements that the company pays dividends to its seed investors, Buhl breathlessly assumes that Takio was a member of Folium.

32.    Buhl's article then contains the following false and defamatory statement (which was not taken from the *Takio* complaint): "According to a person who has worked with the company Shan has allegedly made comments to staff that 'his wife is good for hiding money.'" Buhl vaguely cites to an unnamed "person who has worked with the company" as the source of this false information.  She further insinuates some nefariousness by stating that Shan's "Linkedin bio doesn't list any work experience before starting Folium" as if to imply that Plaintiffs have something to hide, despite mentioning that Shan stated in a podcast interview that he previously worked in the tech business in San Francisco.

33.    Plaintiff Shan never made comments to any member of Folium's staff that "his wife is good for hiding money."  This fabricated and false statement is a transparent attempt on the part of Buhl and/or her accomplices to bolster the allegations of the *Takio* complaint and to

damage Shan's character and reputation and expose Plaintiffs to contempt or induce an evil or unsavory opinion of Plaintiffs in the minds of a substantial number of the community of business professionals to which Shan belongs.  It accuses Shan of a serious violation of his professional duties in a matter that is obviously incompatible with the proper conduct of his business, trade or office, and is thus defamatory *per se*.  In publishing this statement, Buhl acted in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible persons.  She knew the negative impact this statement would have on Plaintiffs' reputations in the community.

34.     Instead of quoting the detailed timeline of events in the Federal Court complaint by Folium against Takio which demonstrate that Takio has no viable claim to an equity interest in Folium, Buhl quotes the nebulous and non-specific "last line" of the *Takio* lawsuit's allegations – alleged upon information and belief – that Shan and Nguyen have engaged in "'numerous other acts of misconduct that have caused significant harm to Folium and its members, including Takio.'"  Buhl asserts that this vague allegation is actually a "broad warning that other dubious allegations could come out in an amended complaint," again relying on pure speculation to suggest additional facts which have no basis in reality but are transparently meant to impugn Plaintiffs' reputations.

35.     Buhl concludes the article with the assertion that "[Folium's counsel] Attorney Baily did not respond to a request for comment," which was not accurate as Mr. Baily provided Buhl with a statement on or about August 29, 2019, the same day as her request, which upon information and belief, Buhl received prior to publishing her article.

36.     Buhl's statements were false or in reckless or conscious disregard of the truth. Indeed, Buhl knew or should have known that the allegations in the subject article were false and

defamatory.  She recklessly ignored readily-available public information contained in Folium's

Federal Court complaint confirming that Takio has no contractual right (and never had any

contractual right) to equity in Folium.  She also irresponsibly and recklessly relied upon

allegations purportedly provided to her by an unnamed "person who has worked with the

company" and pure speculation about "other acts of misconduct" to support the false allegations

in the article.  No other source is identified in the article.

37.     At the time she published the defamatory article on the Cannabis Law Report

website, Buhl had no reliable external evidence to corroborate any of the false allegations of the

"person who has worked with the company" cited in the article that she allegedly consulted.

Upon information and belief, to the extent Buhl was not fabricating this "person" altogether, the

source was a disgruntled former employee – one of the Colorado Litigants and/or Ryan Lewis –

who Buhl knew, or should have known and recklessly disregarded, was inherently untrustworthy

because each of the aforementioned individuals were terminated from Folium for cause.  Without

any objective external evidence to corroborate the allegations she intended to include in the

article, Buhl's reliance on these "sources" was reckless and irresponsible.

38.     At the very least, Buhl had an obligation, in the face of the objective evidence

rejecting the false themes of the article and with knowledge of the tenuous nature of the

"sources" she had allegedly consulted, to make sure that she properly contacted Plaintiffs to

obtain accurate information about any further "reporting."  Unfortunately, Buhl decided to

double-down on her malicious agenda and began making even more egregiously false and

misleading accusations and published further lies to members of Plaintiffs' community.

39.     On or about August 29, 2019, Buhl posted the following message from her

Twitter account (@buhlreports[2]): "If you have worked for Folium Biosciences and had similar issues with its CEO Kash Shan reach out to us confidentially at teribuhl@gmail.com."  This publicly-disseminated statement assumes that former employees would have "similar issues" with Shan, despite the lack of any objective evidence of any legitimate issues (besides those that Buhl could describe only on the basis of speculation in the article published that day).

40.     On or about September 3, 2019, Buhl posted the following message on her Twitter account (@buhlreports): "Looking to speak with ex staff of Folium Bioscience DM me."

41.     On or about September 3, 2019, Buhl posted a message on her Twitter account (@buhlreports) to Christopher Toy, Global Enterprise Consultant & Partner for Folium, asking: "@ctoy76 do you still work for Folium?"

42.     On or about September 3, 2019, Buhl messaged Toy on LinkedIn: "Chris - we need to talk.  I am working on a story about Folium.  I would like to give you a chance to comment about accusation of taking kickbacks."  Mr. Toy has not taken any kickbacks during his time at Folium.  Buhl did not state where this "accusation" came from.

43.     On or about September 22, 2019, Buhl left a voicemail for Heidi Hill, founder of Holistic Hound, a customer of Folium, which was only the first of approximately four messages form Buhl to Hill over the course of the ensuing weeks, falsely stating that: "two former employees … said you had bought some of [Folium's] wholesale CBD products and that it had caused death or severe sickness in some dogs that had bought your product."  To the best of Plaintiffs' knowledge, neither Holistic Hound's nor Folium's products have caused severe sickness or death in dogs.  Plaintiffs had never heard of any such allegation relating to its

---

[2] As of the filing of this Complaint, @buhlreports is a public Twitter account with approximately 1,639 followers.

products until Hill forwarded Buhl's message to them.  This statement appears to be a complete fabrication by either Buhl herself or one of her accomplices and clearly demonstrates that Buhl is engaged in a concerted effort to smear, defame, and destroy Plaintiffs' business.  This statement was directed at a customer of Folium in a transparent attempt to damage Folium's most important business relationships.  Unfortunately, it was not an isolated incident.

44.     In or around October 2019, Buhl attempted to communicate with various employees of Folium on LinkedIn, harassing the employees for information and repeatedly seeking to manipulate and twist their words to satisfy Buhl's nefarious motives.

45.     On or about October 10, 2019, Buhl falsely commented on Twitter that: "My story research shows they [Folium] were not vertically integrated."



*See* https://twitter.com/buhlreports/status/1182335858021666817.  This statement is false. Folium is in fact vertically integrated.  Once again, Buhl cites unnamed, unidentified, and anonymous "research" in making a claim that is directly contradicted by numerous publicly available sources.  Buhl has yet to publicly present any of her purported "research," and if the past is any indication, she will likely claim that her "sources" (of fabricated, false, and/or misleading information) must be kept confidential in order to protect these "sources."

46.     On or about October 10, 2019, Buhl called Duncan Schmidt, an employee at Holistic Hound, a customer of Folium, and falsely stated that a Holistic Hound product

containing Folium product was responsible for the death of a dog and that Folium falsified

Certificates of Analysis (COAs).  To the best of Plaintiffs' knowledge, neither Holistic Hound's

nor Folium's products have caused severe sickness or death in dogs.  Moreover, Folium has not

falsified its COAs.  These false statements were directed at a Folium customer and were intended

to damage Plaintiffs' relationship with its important business partners.  In accusing Folium of the

serious and likely criminal act of falsifying COAs, Buhl statements were transparently intended

to damage Plaintiffs' business and reputation and were defamatory *per se*.

47.     On or about October 10, 2019, Buhl left a voicemail for Chris Toy, falsely

alleging again that Toy solicited investors for Folium for a fee, without registering as an

investment advisor with the Securities and Exchange Commission (SEC).  Mr. Toy never

received any fees for investors he brought to Folium.

48.     On or about October 10, 2019, Buhl sent an e-mail to Plaintiff Shan falsely

accusing Folium and Shan of, among other things, being "aware of Craig Brand your general

counsel['s] attempt to hire a person for a murder for hire against Ryan Lewis in August 2018

with an offer to pay the person $100k;" having falsified reports to regulators; and having "had

pregnant women have to go to the hospital because of the lack of compliance in disposing of

chemicals."  Each one of these statements (and many others contained in Buhl's outrageous

email) were and are completely false.  Plaintiffs are emphatically <u>not</u> aware of any criminal act

on the part of Brand, nor do they believe Brand hired or attempted to hire anyone to murder

Lewis, or anyone else for that matter.  Plaintiffs have not falsified reports to regulators.  To the

best of Plaintiffs' knowledge, Plaintiffs have been and are in compliance with all requisite rules

and regulations for the disposal of chemicals, and are not aware of any "pregnant women

hav[ing] to go to the hospital" as a result of Plaintiffs' disposal of chemicals.  This e-mail is just

one particularly egregious example of Buhl's shocking and offensive behavior and sheer
contempt for Plaintiffs.

49.     On or about October 15, 2019, Buhl sent a text message to Robert Ivey, a Folium
employee, falsely stating: "Robert please give me a call.  I am reporting a story on Folium.  I
need your response to statements made by staff that you worked with Brad Jones to bring in
marijuana to extract from California."  Mr. Ivey responded to Buhl that her allegations were false
and defamatory *per se*.  Buhl responded to Ivey's denial, stating: "Which lawyer wrote that for
you?  Are you worried if Kash is arrested or charged by regulators that he will blame you?"  Mr.
Ivey was never involved in the interstate trafficking of marijuana.  Buhl's outrageous statements
regarding potential criminal liability are plainly intended to instill fear in Plaintiffs' employees
without any regard for truth or decency, much less journalistic integrity.  As is evident from this
chronological recitation of Buhl's statements, her defamatory attacks are becoming increasingly
aggressive and extreme.

50.     On or about October 16, 2019, Buhl sent a text message to Jenna Knapp,
Executive Vice President of Operations for Folium, stating: "Jenna I am going to report you
ordered the graphic designer to change COA third party reports to change the thc level.  Let me
know if you want to comment."  Ms. Knapp never ordered anyone to change COAs.  Buhl's
repeated and harassing accusations of wrongdoing to several Folium employees are outrageous
and false.

51.     On or about October 16, 2019, Buhl e-mailed Scott Dowty, Chief Executive
Officer of Australis Capital Inc., stating: "The two [people] I spoke with at Folium say Kash lied
in the press release [of April 3, 2019, available at
https://www.biospace.com/article/releases/folium-biosciences-to-power-hemp-industry-s-first-

complete-financial-solutions-program/] with the intention to create buzz so that the $AUSA stock price would go up."  Buhl further asked Dowty: "Can you provide comment on alleged inaccurate statements made in the April 3rd press release."  Australis invested $3,000,000 in Folium in a private offering investment in January of 2019.  Buhl's statements are malicious and false statements of fact that expose Plaintiffs to contempt in the minds of a substantial number of the community, and indeed are defamatory *per se* because they suggest that Shan was involved in criminal conduct.  Shan did not lie in the April 3, 2019 press release.  Buhl's statements demonstrate an evil motive to damage and destroy Plaintiffs' reputation.

52.     Upon information and belief, Buhl was aware that the above defamatory statements were false when she made them.  At the very least, these statements were made in reckless or conscious disregard of the truth.

53.     Buhl has routinely disregarded and continues to blatantly disregard and run roughshod over matters of public record.  She is maliciously defaming Plaintiffs for the sole purposes of increasing traffic to her articles, garnering money for herself or her accomplices, assisting the Colorado Litigants, Fortis Law, Lewis, and/or potentially assisting short sellers of Folium's investors.  Buhl, in connection with her accomplices, is generating false and misleading information, harassing Folium's employees and customers, and creating sensational, click-bait headlines and deceitful Tweets all in an effort to negatively affect Folium's business and revenues, decrease the valuation of Folium, and interfere with the potential acquisition and purchase of Folium.

54.     As a direct and proximate result of the foregoing defamatory statements and tortious actions of Buhl, Plaintiffs have sustained, and will continue to sustain, immediate and irreparable harm and injury, including, but not limited to, damage to reputation, loss of profits,

loss of business relations with existing and future business prospects, and loss of competitive business advantage, opportunity, and/or expectancy.  These actions also threaten to destroy the livelihoods of Folium's over-200 employees.  The irreparable harm to Plaintiffs will continue, without any adequate remedy at law, unless and until Buhl's unlawful conduct is enjoined by this Court.

55.     As such, Folium and Shan now bring claims against Buhl for defamation *per se*, tortious interference with prospective economic advantage, and injurious falsehoods, and seek injunctive relief, both preliminary and permanent, as well as monetary damages.

## COUNT I
### (DEFAMATION *PER SE*)

56.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 55 above as if fully stated herein.

57.     Buhl has intentionally made knowingly false and defamatory statements of fact about Plaintiffs to third parties that were reasonably understood by those who read or heard them to be statements of fact regarding Plaintiffs' operation of Folium business.

58.     Specifically, Buhl's statements include, without limitation, the above-described false assertions that:

    a.   "Shan has allegedly made comments to staff that 'his wife is good for hiding money'";

    b.   "[Folium's] wholesale CBD products … caused death or severe sickness in some dogs";

    c.    "[Folium] w[as] not vertically integrated";

    d.   Folium falsified COAs; and

    e.   Shan "lied in the [April 3, 2019] press release with the intention to create

buzz so that the $AUSA stock price would go up"

(collectively, the "Buhl Statements").

59.     The Buhl Statements are all false, misleading, and defamatory in that they falsely
imply that Plaintiffs are engaged in crimes of moral turpitude and matters incompatible with the
proper conduct of Plaintiffs' business, trade, or office; falsely imply that Plaintiffs' products are
unsafe and that Plaintiffs have not disclosed this information to its customers; falsely imply that
Plaintiffs have misrepresented their business structure and ownership; and falsely imply that
Plaintiffs have committed criminal violations of securities laws.

60.     Buhl communicated these lies (the Buhl Statements) to Folium's customers and
the public at large even though, upon information and belief, she knew them to be untrue when
she made the statements.  In publishing the Buhl Statements, Buhl acted maliciously,
oppressively, with an improper and evil motive, and if not with knowledge that the Buhl
Statements were false, then in reckless or conscious disregard of the truth (including publicly
available information that Buhl made a deliberate decision not to acquire because that
information might confirm the probable falsity of the defamatory Buhl Statements).

61.     Plaintiffs in no way approved the false and defamatory statements published by
Buhl.

62.     Buhl disseminated and published these false and defamatory statements on, at a
minimum, the Cannabis Law Report website, her website, and her Twitter account in a manner
that achieved widespread exposure to a global internet audience.

63.     The Buhl Statements were malicious and false statements of fact that expose
Plaintiffs to hatred, contempt, or aversion, or induce an evil or unsavory opinion of Plaintiffs in
the minds of a substantial number of the community and the cannabis industry.

64.     In publishing the Buhl Statements, Buhl was not acting in the role of the "independent press" or as a "professional journalist."  Indeed, in publishing the Buhl Statements, Buhl acted in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible persons.

65.     The Buhl Statements were made with the intent to harm and out of hostility towards Plaintiffs.

66.     The Buhl Statements are defamatory *per se* because Buhl has charged Plaintiffs with serious criminal offenses.

67.     Moreover, the Buhl Statements are defamatory *per se* in that they tend to impugn Plaintiffs' reputations in their business, trade, and profession, and indeed have harmed Plaintiffs in their business, trade, and profession.

68.     As a result of the false and defamatory statements published by Buhl, Plaintiffs' relationships with their customers, marketing partners, employees, and vendors have been undermined and damaged.

69.     As a result of the false and defamatory statements published by Buhl, Plaintiffs have been forced to make an expenditure of money to remedy the defamation.

70.     Plaintiff Shan has suffered and will continue to suffer non-economic damages, such as personal humiliation, emotional distress, and damage to his reputation and standing in the community.

71.     Buhl made the Buhl Statements of and concerning Plaintiffs with the specific intent to cause harm to Plaintiffs, and did so willfully and with malice, and, thus, Plaintiffs are entitled to, in addition to other damages and amounts, an award of punitive and exemplary damages.

72.     As a direct and proximate cause of the false and defamatory statements, Plaintiffs have suffered, and continue to suffer, substantial damages, including, without limitation in the reasonable expectation loss of current and/or future clients, and, accordingly, Plaintiffs are entitled to damages in an amount to be determined at trial, but not less than $10,000,000.

<u>COUNT II</u>
**(TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE)**

73.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 72 above as if fully stated herein.

74.     As set forth above, prior to Buhl's interference, Plaintiffs had strong business relationships with its customers, including, among others, customers of its wholesale CBD products for animal health, such as (but not limited to), Holistic Hound.

75.     By Buhl's deliberate interference and communications specifically targeted at Plaintiffs' customers, Buhl acted solely for the purpose of injuring Plaintiffs and Plaintiffs' relationships with its important customers.  Those relationships have been damaged by the doubt and fear that Buhl's interference has sewn in Plaintiffs' customers about the safety of Plaintiffs' products and about the professional and ethical conduct of Plaintiffs' business.  Indeed, Folium has had to field numerous calls from prospective customers to address concerns arising from Buhl's article, which such customers believe to be true.

76.     As set forth above, prior to Buhl's interference, certain companies were contemplating the potential acquisition and purchase of Folium.

77.     Upon information and belief, Buhl, aware that certain companies intended to acquire Folium, interfered with Plaintiffs' prospective business relations with those companies by making false allegations against and about Plaintiffs and by employing other improper and wrongful means to damage Plaintiffs' business.

78.    Upon information and belief, Buhl, in interfering with Plaintiffs' prospective business relations with certain companies, acted solely for the purpose of injuring Plaintiffs.

79.    The contracts with such companies, which were lost and/or devalued as a result of Buhl's misconduct, would have been worth millions to billions of dollars each, depending upon the contractual counterparty or lost business opportunity.  But for Buhl's interference, those companies would have done business with Plaintiffs and/or would have continued doing business with Plaintiffs.

80.    Upon information and belief, Buhl has used improper and wrongful means, and acted solely for the purpose of injuring Plaintiffs, with respect to other, currently unknown prospective clients of Plaintiffs, and have thereby caused Plaintiffs to lose accounts, contracts, business, business relationships, and/or revenue that Plaintiffs would have otherwise obtained.

81.    As a direct and proximate cause of the foregoing, Plaintiffs have suffered, and continue to suffer, substantial damages, and, accordingly, Plaintiffs are entitled to damages in an amount to be determined at trial, but not less than $10,000,000.

## COUNT III
## (INJURIOUS FALSEHOOD)

82.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 81 above as if fully stated herein.

83.    Buhl has intentionally made knowingly false statements of fact about Plaintiffs to third parties.  Such statements include, without limitation, the Buhl Statements identified above.

84.    The Buhl Statements are all false, misleading, and defamatory.

85.    Buhl communicated such lies to Folium's customers and the public at large even though, upon information and belief, she knew them to be untrue when she made the statements.

86.    Upon information and belief, Buhl made the aforementioned false statements

maliciously and with the intent to cause harm to Plaintiffs.

87.     Buhl's misconduct has, at a minimum, caused Plaintiffs to suffer pecuniary losses with respect to the loss of business with certain companies and the decreased valuation of the company, each of which would have been worth millions to billions of dollars (depending upon the specific lost opportunity), and has further caused Plaintiffs as-yet unknown pecuniary losses along with damage to Plaintiffs' reputation.

88.     Buhl's misconduct has, at a minimum, caused Plaintiffs to suffer pecuniary losses with respect to the money they have had to spend to counteract Buhl's defamatory statements and damaging actions, including without limitation, the fees paid to their attorneys to prepare this complaint and litigate this action against Buhl, so that Plaintiffs' reputation can be defended and restored.

89.     As a direct and proximate cause of the foregoing, Plaintiffs have suffered, and continue to suffer, substantial damages, and, accordingly, Plaintiffs are entitled to damages in an amount to be determined at trial, but not less than $10,000,000.

**DEFENDANT'S CONDUCT WARRANTS PUNITIVE AND EXEMPLARY DAMAGES**

90.     Buhl's conduct warrants the imposition of punitive damages.  The factors justifying punitive damages include, at a minimum, the following:

a.  Buhl specifically targeted Plaintiffs in order to grab headlines and gain notoriety;

b.  Buhl ignored or recklessly disregarded publicly available information rebutting their false assertions;

c.  Buhl published the statements to Plaintiffs' customers and investor with knowledge that Plaintiffs were unaware of the allegations;

    d.   Buhl acted with knowledge that the statements in the article and the statements published to third parties were false, or with reckless disregard for the statements' truth or falsity; and

    e.   Buhl deliberately posted comments about the article on other websites after it was published, including on her Twitter account.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs Folium and Shan respectfully request that the Court enter an order and judgment in favor of them against Defendant Buhl, containing the following relief:

a.    Preliminarily and permanently enjoining Buhl, and her partners, agents and employees, and any and all other persons in active concert or participation with her, and any and all other persons, corporations, or other entities acting under the supervision, direction, control, or on behalf of any of the foregoing from engaging in any further acts of defamation or injurious falsehood against Plaintiffs or tortious interference with any existing or prospective customer or business relation of Plaintiffs.

b.    Awarding Plaintiffs damages in an amount to be proven at trial, but no less than $10,000,000, to compensate Plaintiffs for harm to their professional reputation and all monetary losses they have suffered;

c.    Awarding Plaintiffs punitive and exemplary damages, in an amount to be proven at trial;

d.    Awarding Plaintiffs interest in an amount according to law;

e.    Requiring Buhl to pay Plaintiffs their costs and expenses in this action, including attorneys' fees, costs, and disbursements; and

f.    Granting Plaintiffs such other and further relief at law or in equity as the Court

deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs Folium and Shan hereby

demand a trial by jury in this action on all claims so triable.

Dated: New York, New York
       October 30, 2019

Respectfully submitted,

**ROBINS KAPLAN LLP**

*/s/ Reena Jain*
Craig Weiner
Ofer Reger
Reena Jain
399 Park Avenue, Suite 3600
New York, New York 10022
Tel.: (212) 980-7400
Fax: (212) 980-7499
CWeiner@RobinsKaplan.com
OReger@RobinsKaplan.com
RJain@RobinsKaplan.com

***Attorneys for Plaintiffs Whole Hemp
Company LLC d/b/a Folium Biosciences
and Kashif Shan***

## VERIFICATION

I, Kashif Shan, on behalf of myself and Whole Hemp Company LLC d/b/a Folium Biosciences ("Folium"), verify under penalty of perjury that the factual statements in this Complaint concerning myself and Folium are true and correct to my knowledge, except as to those matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true.

Executed this ___29th___ day of October, 2019.

_____

Kashif Shan
Chief Executive Officer and Founder of Folium