**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------- X

WHOLE HEMP COMPANY LLC d/b/a        :
FOLIUM BIOSCIENCES and KASHIF SHAN,      Case No.: 1:19-cv-10073-VSB
                                    :
        Plaintiffs,          **FIRST AMENDED VERIFIED**
                                    :   **COMPLAINT**
   v.
                                    :   **JURY TRIAL DEMANDED**
TERI BUHL,
                                    :
        Defendant.
                                    :

---------------------------------------- X

      Plaintiffs Whole Hemp Company LLC d/b/a Folium Biosciences ("Folium") and Kashif

Shan ("Shan") (collectively, "Plaintiffs"), by and through their undersigned counsel, for their

First Amended Verified Complaint against Defendant Teri Buhl ("Buhl" or "Defendant"), hereby

allege as follows:

<u>**STATEMENT OF THE CASE**</u>

      1.    This case is about an ongoing coordinated campaign by Defendant Teri Buhl and

her unknown financial backers to damage Plaintiffs' business and reputation by defaming and

disparaging Plaintiffs' business practices and falsely accusing several of Plaintiffs' employees of

various unlawful acts.  Buhl has intentionally defamed Plaintiffs by, *inter alia*, publishing false

statements regarding Folium's business practices and financial dealings, harassing Folium

employees to seek information and comments about plainly-fabricated accusations from

disgruntled former employees, and contacting Folium's customers to outrageously allege that its

products cause severe sickness and death.  In the face of objective evidence clearly refuting her

false statements, and in response to the initial complaint in this action, Buhl has continued her

campaign to defame Plaintiffs.  Plaintiffs seek injunctive relief and money damages, in an amount

exceeding $75,000, for the severe harm caused by Buhl's defamatory statements and her and her accomplices' malicious and unlawful actions against Folium, Shan, and other Folium executives and employees.

2.     Buhl refers to herself as "a professional financial investigative journalist," when in reality she appears to be nothing more than a paid shill and hack writer with a long and well-established history of publishing defamatory statements in an effort, upon information and belief, to raise money for herself, increase internet traffic to her website, and to benefit her unnamed benefactors – short sellers and pump-and-dump artists with whom she is engaged, directly or indirectly, in the manipulation of stocks for financial gain.  Upon information and belief, Buhl has a bench warrant out for her arrest in Rhode Island for failing to pay restitution for felony check fraud, and she recently served time in Connecticut state prison for misdemeanor harassment and breach of peace arising out of the publication of private and scandalous material on the internet.  She is currently and has been a defendant in multiple civil actions for her defamatory publications.

3.     Buhl's campaign of defamation and disparagement against Plaintiffs began at the latest, on or about August 29, 2019, when an article she wrote was published on Cannabis Law Report's website.  In the article, which describes allegations made by a former employee of Folium in a lawsuit filed by the former employee in Colorado state court, Buhl defamed and disparaged Plaintiff Shan by, among other things, falsely alleging that Shan made statements to Folium staff that "his wife is good for hiding money."  Although the article purports to cite an unnamed source ("someone who worked with the company") for this inflammatory allegation, the article is, in truth, little more than a sensational attempt to besmirch Plaintiffs based on double-hearsay and unfounded speculation.

4.      Following publication of this article, Buhl has continued her campaign to falsely

and maliciously accuse Plaintiffs of various unlawful acts, has published false or intentionally

misleading statements on her social media pages, and has repeated fabrications and falsehoods

by unnamed former employees of Folium in harassing calls and communications to a number of

current Folium employees and customers, all under the guise of working on an additional "story"

about the Plaintiffs.  Indeed, after the initial complaint in this lawsuit was filed (on October 30,

2019), Buhl published a second defamatory and disparaging article on Cannabis Law Report –

this second article was published on or about November 9, 2019, more than two months after her

first article.  Among other unlawful actions, Buhl has defamed Plaintiffs with the following false

statements:

  a.  On or about August 29, 2019, Buhl wrote in an article posted on Cannabis
      Law Report's website: "According to a person who has worked with the
      company Shan has allegedly made comments to staff that 'his wife is good for
      hiding money'";

  b.  On or about September 22, 2019, Buhl left a voicemail for Heidi Hill, founder
      of Holistic Hound, a customer of Folium, stating: "two former employees …
      said you had bought some of [Folium's] wholesale CBD products and that it
      had caused death or severe sickness in some dogs that had bought your
      product";

  c.  On or about October 10, 2019, Buhl posted on Twitter: "My story research
      shows they [Folium] were not vertically integrated";

  d.  On or about October 10, 2019, Buhl called Duncan Schmidt, an employee at
      Holistic Hound, a customer of Folium, and alleged that a Holistic Hound
      product containing Folium product was responsible for the death of a dog and
      that Folium falsified Certificates of Analysis (COAs);

  e.  On or about October 16, 2019, Buhl e-mailed Scott Dowty, Chief Executive
      Officer of Australis Capital Inc., stating: "The two [people] I spoke with at
      Folium say Kash lied in [an April 3rd] press release with the intention to
      create buzz so that the $AUSA stock price would go up";

  f.  On or about November 8, 2019, in another article posted on Cannabis Law
      Report's website, Buhl wrote the following false statements (among others):

  i. "Folium Biosciences Colorado: Stock hiking, cutting corners, sidestepping regulatory requirements & strong arm tactics";

  ii. "According to two former Folium employees internal rumblings at the company this past spring were that Kashif Shan had stock or discounted warrants in Australis and the press release Folium wrote was used in the hopes of moving the stock price up";

  iii. "According to over half a dozen former Folium employees, interviewed by CLR, mis-truths are simply party [sic] of the company's corporate culture";

  iv. Describing Folium as "Cutting Corners, Sidestepping Regulatory Requirements";

  v. Accusing Folium of "buying hot hemp, meaning cannabis with THC above the Federal mandated minimum % , from a California grower in August 2018 when Colorado hemp supply was unavailable to Folium because of strained relationships with local growers who had experienced slow or non-payment for goods by Folium, according to two former Folium employees," and subsequently stating "[b]ut then, according to two former Folium sales employees familiar with the deal, the cannabis was used anyways to process CBD oil and subsequently sold";

  vi. "After Cannabis Law Report published our first story on the alleged problems at Folium , a former graphic designer at the company, based out of the Colorado Springs office came forward to inform CLR that they, as a designer employed at the company, had been asked to doctor Certificate of Analysis reports by Folium management";

  vii. "Former Folium employees have also informed CLR that fudged CBD or THC levels were the least of their worries when it came to the company's day to day operations";

  viii. "[A] former driver for the company said … that Folium's Rocky Ford location was used to house the chemicals the company wanted to hide from inspectors";

  ix. Stating that Folium uses "Strong Arm Tactics to Silence Whistleblowers and Competitors";

g. On or about November 8, 2019, Buhl posted on Twitter: "My new Story on how US cbd wholesale company with Australis investment makes Canntrust look innocent including a murder 4 hire attempt";

h. On or about November 8, 2019, Buhl posted on Twitter: "Folium Biosciences

4

a large wholesale producer of CDB [sic] has run rampant over Hemp & state licensing regs which included alleged illegal transportation of chemicals & buying 'hot' flower that was allegedly turned into CBD'';

i.  On or about November 8, 2019, Buhl posted on Twitter: "Today I rpt how Folium leadership allegedly attempted a murder 4 hire after an exec left to start his own CBD company";

j.  On or about November 8, 2019, Buhl posted on Twitter: "Most alarming part of my investigation in @Foliumbiosci was how little Co Springs fire and police or Co dept of Ag has done to curb execs behavior & lack of willingness to follow regs"; and

k.  On or about November 8, 2019, Buhl posted on Twitter: "I report: How Scott Dowty of $AUSA Australis & a private wholsesale [sic] cbd company made an alleged false press release that led to stock run up."

Each of the above statements are false and/or create the false impression that the factual statements contained therein are true. They are not. Buhl knew or should have known that the allegations and statements described above were false and defamatory. She acted in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible persons, she recklessly ignored readily available public information, and she knowingly made, or reasonably should have known that she was making, false and disparaging statements about Plaintiffs – both publicly and privately. Because Buhl charged Plaintiffs with serious crimes regarding the falsification of certificates, the intentional manipulation of publicly-traded stock, and attempted murder, Buhl's statements are defamatory *per se*. Buhl's actions also constitute tortious interference with prospective economic advantage and injurious falsehood.

5.    Upon information and belief, Folium is under the impression that Buhl has been working with disgruntled former Folium employees who have brought lawsuits against Folium, Shan, and Quan Nguyen (Senior Vice President of Business Development for Folium) in Colorado state district court. Buhl's aforementioned actions and those described in more detail

below appear to be part of a coordinated campaign to defame Plaintiffs, to interfere with

Plaintiffs' current contractual and prospective business relationships, and to damage the property

interests of Plaintiffs.

6. Plaintiffs bring this action to vindicate their rights and reputation under the law.

In addition to the substantial reputational harm caused by Buhl's false allegations in the articles

published on Cannabis Law Report, calls and e-mails to Plaintiffs' employees, independent

contractors, and customers, and multiple social media posts and comments, Plaintiffs have been

damaged by having to expend substantial resources to respond to Buhl's false statements and in

having their business and professional reputations disparaged in the marketplace. Buhl's

statements have harmed and threatened further harm to Plaintiffs' relationships with investors,

marketing partners, and the livelihood of Folium's over *200 employees*. By falsely suggesting,

repeating, and publishing lies that various Folium employees have committed criminal acts,

Buhl's defamatory statements have also decreased Folium's value as a going concern and

threaten to further decrease Folium's value in any potential future transaction.

7. Based on the ongoing harm and likelihood of further irreparable harm in the

future, Plaintiffs seek, in addition to monetary damages, a permanent injunction to put an end to

Buhl's malicious tactics.

## **PARTIES**

8. Plaintiff Folium is a limited liability company organized and existing under the

laws of the State of Colorado with its principal place of business at 615 Wooten Road, Suite 110,

Colorado Springs, Colorado 80915. Folium is the largest known vertically integrated producer,

manufacturer, and global distributor of hemp derived cannabinoids ("CBD") in North America.

9. Plaintiff Shan is an individual with a principal place of business and residence in

6

Colorado.  Shan is the Chief Executive Officer and Founder of Folium.

10.     Upon information and belief, Defendant Buhl is an individual with a principal place of business and residence on York Avenue in New York, New York. According to a declaration Buhl filed recently in an unrelated matter in the Southern District of Florida (in which Buhl is also being sued for defamation), she has been a full time resident of New York City for the past three years.  *See Kesner v. Barron's, Inc. et al.*, S.D. Fla. Case No. 19-cv-61370-RS, Dkt. No. 47, at ¶ 2.  Buhl states that she has worked as a freelance journalist for over a decade.  *Id.* at ¶ 8.  She currently reports for Cannabis Law Report, and also writes and publishes articles to her website at http://www.teribuhl.com/.  According to Buhl, her "reporting concentrates on covering wrong doing in the financial industry."  *Id.* at ¶ 13.  Some of her reporting is on her website, (teribuhl.com), which Buhl admits is "funded through advertisement" and "reader funded donations."  *Id.* at ¶ 16.  Although Buhl claims that "[she] doesn't take ads from the subject of [her] stories" and is "not paid by the subjects of stories to write about them," (*id.*) she does not appear to deny that she regularly obtains funding from: (a) short-sellers who can capitalize on fluctuations in the stock prices of the "targets" of her "stories," or (b) competitors of the "targets" who have an interest in harming these "targets" of her "stories."  Buhl regularly solicits "donations" through her twitter posts for her "reporting."

11.     Buhl is no stranger to court proceedings.  She has been the subject of numerous allegations of misconduct, including, *inter alia*, a number of defamation claims filed against her in various jurisdictions around the country.  *See, e.g.*, *Imbruce v. Buhl et al.*, D. Conn. Case No. 3:15-cv-00554-JAM; *Honig v. Ladd et al.*, M.D. N.C. Case No. 1:17-cv-00184-CCE-LPA; *Kesner v. Barron's, Inc. et al.*, S.D. Fla. Case No. 19-cv-61370-RS.

12.     Buhl's actions have not only brought her to the courts as a civil litigant, but also

as a criminal defendant.  In or around 2002, she was arrested and charged in Rhode Island with felony check fraud, and upon information and belief, she pled guilty to at least one felony charge and was ordered to pay restitution.  As of the filing of this First Amended Verified Complaint, Buhl appears to have an outstanding balance due of $8,020 on her restitution payments, and has a bench warrant out for her arrest.  *See* https://publicportal.courts.ri.gov/app/RegisterOfActions/#/ 8331041/anon/portal embed.  More recently, Buhl was found guilty on misdemeanor charges of harassment and breach of peace, and was sentenced to 30 days in jail, one-year probation, and a strict order not to interact with the victim's family by a Connecticut state court as a result of Buhl posting portions of her then-boyfriend's teenage-daughter's private journals concerning highly intimate personal matters on Facebook.  *See State v. Buhl*, 321 Conn. 688 (2016).

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (diversity jurisdiction) because the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and the action is between citizens of different states.

14.     This Court has personal jurisdiction over Buhl pursuant to New York CPLR § 301 because Buhl is a resident of New York.  Alternatively, jurisdiction is predicated on CPLR § 302(a)(1).

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Buhl resides in New York, New York and, in her own words, "can only afford to defend [herself] … in the Sothern [sic] District of New York."  *See Kesner v. Barron's, Inc. et al.*, S.D. Fla. Case No. 19-cv-61370-RS, Dkt. No. 47, at ¶ 22.  Alternatively, venue is predicated on 28 U.S.C. §§ 1391(b)(2) and/or (b)(3) because a substantial part of the defamatory statements and tortious acts committed by Buhl which give rise to the Plaintiffs' claims occurred in New York.  New

York law applies to this action.

## STATEMENT OF FACTS

### Folium Biosciences: An Industry Innovator

16.    Folium is the largest known vertically-integrated producer, manufacturer, and global distributor of hemp derived CBD in North America.  The company is a business-to-business, bulk, and wholesale supplier of hemp-derived THC free (0.0%) CBD oil, water-soluble technology, and CBD products for human wellness and animal health.

17.    Folium was founded in 2014 in Colorado Springs, Colorado by Shan.  It is fully licensed and registered with the Colorado Department of Agriculture, and all of its Phytocannabinoid-Rich (PCR) hemp is grown in compliance with the landmark Agricultural Improvement Act of 2018, also known as the 2018 Farm Bill.

18.    Upon information and belief, Folium is the world's first hemp company issued a Certificate of Health and Free Sale and a Manufactured Food Establishment License by the Colorado Department of Public Health & Environment, certifying its 0.0% THC (non-detectable THC) products meet the requirements for human consumption as well as legal distribution.

19.    Folium has over 300,000 sq. ft. of manufacturing space in southern Colorado, which supports processing, extraction, and purification operations.  Folium currently employs more than 200 people.

20.    Earlier this year, Folium successfully acquired FeyeCon Development and Implementation, BV and FeyeCon, BV (collectively, "FeyeCon"), located in Amsterdam. FeyeCon is one of Amsterdam's first licensed cannabis researchers and developers which designs and fabricates large scale processing equipment and supercritical $CO_2$ extraction machinery.

21.     Also this year, Folium, in partnership with CannaSecure Alliance, announced the formation of Folium Finance, the industry's first complete financial solutions program, designed to deliver a variety of services, including, *inter alia*, supply chain financing, competitive CBD merchant processing services, traditional bank accounts, CBD/hemp-friendly credit lines, property and casualty insurance, and employee insurance benefits for Folium's customers.

22.     Most recently, Australis Capital Inc. ("Australis") invested $3,000,000 in Folium in a private offering investment.

23.     As the industry's premier hemp company for manufacturing, processing, and distributing phytocannabinoid-rich bulk CBD oil, water-soluble technologies, and finished food products, Folium has attracted prospective outside buyers for the company.

**The Conspiracy to Defame, Devalue, and Destroy Folium**

24.     Upon information and belief, Folium strongly suspects that Buhl is working with disgruntled former employees of Folium to comment on and write about Plaintiffs in a false and negative manner.

25.     Certain disgruntled former Folium employees (the "Colorado Litigants") have recently sued Folium, Shan, and/or Nguyen in Colorado state district court in El Paso County, CO by and through the same counsel.  *See Takio v. Whole Hemp Company LLC et al.*, Case No. 2019CV31992 (Colo. Dist. Ct., El Paso Cty); *Ramos v. Whole Hemp Company LLC et al.*, Case No. 2019CV32196 (Colo. Dist. Ct., El Paso Cty); *Young v. Whole Hemp Company LLC et al.*, Case No. 2019CV32242 (Colo. Dist. Ct., El Paso Cty).  The Colorado Litigants were all terminated for cause by Folium, and are now each wrongfully claiming that they are entitled to an equity interest in the company, among other baseless and frivolous allegations against Folium and its executives.

26.     The Cannabis Law Report article written by Buhl that is mentioned above is, in part, about the *Takio* complaint.  *See* https://cannabislaw.report/lawsuit-alleges-secret-cash-payments-by-colorado-cbd-company-ceo-kashif-shan/.

27.     Ryan Lewis is the former Vice President of Global Sales for Folium.  Lewis was terminated for cause by Folium on or about January 12, 2018.  Upon information and belief, Lewis is now the Vice President of Sales and Head of Global Sales for GCX, LLC, a direct competitor of Folium.  Upon information and belief, Global Cannabinoid, Inc. is an alter ego or predecessor of GCX, LLC.  Mr. Lewis was previously represented by the same counsel as the Colorado Litigants.

28.     Upon information and belief, Folium strongly suspects that at least one or more of the Colorado Litigants and/or Lewis are encouraging Buhl to intentionally and maliciously defame Plaintiffs in order to negatively affect Folium's business and revenues, decrease the valuation of Folium, and/or interfere with the potential acquisition and purchase of Folium.

### The Malicious and Unlawful Actions Against and Towards Folium

29.     **The First Article.**  On or about August 29, 2019, Buhl published an article on Cannabis Law Report's website, at https://cannabislaw.report/lawsuit-alleges-secret-cash-payments-by-colorado-cbd-company-ceo-kashif-shan/, that damaged and defamed Plaintiffs and jeopardized their substantial investments in the Folium business.  Appearing with the sensational (and grammatically incorrect) headline "Lawsuit Alleges Secret Cash Payments. By Colorado CBD Company CEO, Kashif Shan," the article describes the allegations in the lawsuit filed by former Folium employee Dale Takio in Colorado state court, *Takio v. Whole Hemp Company LLC et al.*, Case No. 2019CV31992, and provides some background on Folium, but is transparently biased in its description of the dispute, claiming that Plaintiff Shan "allegedly tried

to cut [Takio] out of his promised equity in the privately held company," and goes well beyond the allegations contained in the *Takio* complaint.  Despite referencing the fact that the state court suit quotes emails between Plaintiffs and Takio relating to negotiation of an equity interest for Takio, and that no signed contract was attached to the filings, Buhl implies that Takio is a member of Folium, and thus entitled to an equity stake in the company.  While she briefly mentions the Federal Court complaint filed by Folium against Takio which seeks a declaration that Takio has no contract with Folium that would entitle him to any equity interest, she essentially ignores the well-documented timeline of evidence presented in that pleading and instead quotes heavily from the *Takio* complaint in a transparent attempt to smear and defame Plaintiffs.

30.     In the article, Buhl states that the "juiciest part of the [*Takio*] lawsuit takes a look [sic] Shan's self-dealing and negligence, according to first-hand knowledge by Takio."  Buhl's biased description presumes the veracity of these unproven allegations based on pure speculation.  Buhl knowingly creates the misleading impression that Takio has first-hand knowledge of Plaintiff Shan's purported "self-dealing and negligence."  The article then cites allegations from the *Takio* complaint of alleged payments to Shan, Shan's wife, and Nguyen and quotes the allegation that "[o]ther Folium members, such as Takio did not receive similar distributions."  Despite mentioning Shan's public statements that the company pays dividends to its seed investors, Buhl breathlessly assumes that Takio was a member of Folium.

31.     Buhl's article then contains the following false and defamatory statement (which was not taken from the *Takio* complaint): "According to a person who has worked with the company Shan has allegedly made comments to staff that 'his wife is good for hiding money.'"  Buhl vaguely cites to an unnamed "person who has worked with the company" as the source of

this false information.  She further insinuates some nefariousness by stating that Shan's "Linkedin [sic] bio doesn't list any work experience before starting Folium" as if to imply that Plaintiffs have something to hide, despite mentioning that Shan stated in a podcast interview that he previously worked in the tech business in San Francisco.

32.    Plaintiff Shan never made comments to any member of Folium's staff that "his wife is good for hiding money."  This fabricated and false statement is a transparent attempt on the part of Buhl and/or her accomplices to bolster the allegations of the *Takio* complaint and to damage Shan's character and reputation and expose Plaintiffs to contempt or induce an evil or unsavory opinion of Plaintiffs in the minds of a substantial number of the community of business professionals to which Shan belongs.  It accuses Shan of a serious violation of his professional duties in a manner that is obviously incompatible with the proper conduct of his business, trade or office, and is thus defamatory *per se*.  In publishing this statement, Buhl acted in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible persons.  She knew the negative impact this statement would have on Plaintiffs' reputations in the community and cannabis industry.

33.    Instead of quoting the detailed timeline of events in the Federal Court complaint by Folium against Takio which demonstrate that Takio has no viable claim to an equity interest in Folium, Buhl quotes the nebulous and non-specific "last line" of the *Takio* lawsuit's allegations – alleged upon information and belief – that Shan and Nguyen have engaged in "'numerous other acts of misconduct that have caused significant harm to Folium and its members, including Takio.'"  Buhl asserts that this vague allegation is actually a "broad warning that other dubious allegations could come out in an amended complaint," again relying on pure speculation to suggest additional facts which have no basis in reality but are transparently meant

to impugn Plaintiffs' reputations.

34.    Buhl concludes the article with the assertion that "[Folium's counsel] Attorney

Baily did not respond to a request for comment," which was not accurate as Mr. Baily provided

Buhl with a statement on or about August 29, 2019, the same day as her request, which upon

information and belief, Buhl received prior to publishing her article.

35.    Buhl's statements were false or in reckless or conscious disregard of the truth.

Indeed, Buhl knew or should have known that the allegations in the subject article were false and

defamatory.  She recklessly ignored readily-available public information contained in Folium's

Federal Court complaint confirming that Takio has no contractual right (and never had any

contractual right) to equity in Folium.  She also irresponsibly and recklessly relied upon

allegations purportedly provided to her by an unnamed "person who has worked with the

company" and pure speculation about "other acts of misconduct" to support the false allegations

in the article.  No other source is identified in the article.

36.    At the time she published the defamatory article on the Cannabis Law Report

website, Buhl had no reliable external evidence to corroborate any of the false allegations of the

"person who has worked with the company" cited in the article that she allegedly consulted.

Upon information and belief, to the extent Buhl was not fabricating this "person" altogether, the

source was a disgruntled former employee who Buhl knew, or should have known and recklessly

disregarded, was inherently untrustworthy because that former employee was terminated from

Folium for cause.  Without any objective external evidence to corroborate the allegations she

intended to include in the article, Buhl's reliance on these "sources" was reckless and

irresponsible.

37.    At the very least, Buhl had an obligation, in the face of the objective evidence

14

rejecting the false themes of the article and with knowledge of the tenuous nature of the "sources" she had allegedly consulted, to make sure that she properly contacted Plaintiffs to obtain accurate information about any further "reporting."  Unfortunately, Buhl decided to double-down on her malicious agenda and began making even more egregiously false and misleading accusations and published further lies to members of Plaintiffs' community.

38.     On or about August 29, 2019, Buhl posted the following message on her Twitter account (@buhlreports[1]): "If you have worked for Folium Biosciences and had similar issues with its CEO Kash Shan reach out to us confidentially at teribuhl@gmail.com."  This publicly-disseminated statement assumes that former employees would have "similar issues" with Shan, despite the lack of any objective evidence of any legitimate issues (besides those that Buhl could describe only on the basis of speculation in the article published that day).

39.     On or about September 3, 2019, Buhl posted the following message on her Twitter account: "Looking to speak with ex staff of Folium Bioscience [sic] DM me."

40.     On or about September 3, 2019, Buhl posted a message on her Twitter account to Christopher Toy, Global Enterprise Consultant & Partner for Folium, asking: "@ctoy76 do you still work for Folium?"

41.     On or about September 3, 2019, Buhl messaged Toy on LinkedIn: "Chris - we need to talk.  I am working on a story about Folium.  I would like to give you a chance to comment about accusation of taking kickbacks."  Mr. Toy has not taken any kickbacks during his time at Folium.  Buhl did not state where this "accusation" came from.

42.     On or about September 22, 2019, Buhl left a voicemail for Heidi Hill, founder of

---

[1] As of the filing of this First Amended Verified Complaint, @buhlreports is a public Twitter account with approximately 1,677 followers.

Holistic Hound, a customer of Folium, which was only the first of approximately four messages form Buhl to Hill over the course of the ensuing weeks, falsely stating that: "two former employees … said you had bought some of [Folium's] wholesale CBD products and that it had caused death or severe sickness in some dogs that had bought your product."  To the best of Plaintiffs' knowledge, neither Holistic Hound's nor Folium's products have caused severe sickness or death in dogs.  Plaintiffs had never heard of any such allegation relating to its products until Hill forwarded Buhl's message to them.  This statement appears to be a complete fabrication by either Buhl herself or one of her accomplices and clearly demonstrates that Buhl is engaged in a concerted effort to smear, defame, and destroy Plaintiffs' business.  This statement was directed at a customer of Folium in a transparent attempt to damage Folium's most important business relationships.  Unfortunately, it was not an isolated incident.

43.     In or around October 2019, Buhl attempted to communicate with various employees of Folium on LinkedIn, harassing the employees for information and repeatedly seeking to manipulate and twist their words to satisfy Buhl's nefarious motives.

44.     On or about October 10, 2019, Buhl falsely commented on Twitter that: "My story research shows they [Folium] were not vertically integrated."



*See* https://twitter.com/buhlreports/status/1182335858021666817.  This statement is false. Folium is in fact vertically integrated.  Once again, Buhl cites unnamed, unidentified, and

anonymous "research" in making a claim that is directly contradicted by numerous publicly available sources.  Buhl has yet to publicly present any of her purported "research," and if the past is any indication, she will likely claim that her "sources" (of fabricated, false, and/or misleading information) must be kept confidential in order to protect these "sources."

45.     On or about October 10, 2019, Buhl called Duncan Schmidt, an employee at Holistic Hound, a customer of Folium, and falsely stated that a Holistic Hound product containing Folium product was responsible for the death of a dog and that Folium falsified Certificates of Analysis (COAs).  To the best of Plaintiffs' knowledge, neither Holistic Hound's nor Folium's products have caused severe sickness or death in dogs.  Moreover, Folium has not falsified its COAs.  These false statements were directed at a Folium customer and were intended to damage Plaintiffs' relationship with its important business partners.  In accusing Folium of the serious and likely criminal act of falsifying COAs, Buhl statements were transparently intended to damage Plaintiffs' business and reputation and were defamatory *per se*.

46.     On or about October 10, 2019, Buhl left a voicemail for Chris Toy, falsely alleging again that Toy solicited investors for Folium for a fee, without registering as an investment advisor with the Securities and Exchange Commission (SEC).  Mr. Toy never received any fees for investors he brought to Folium.

47.     On or about October 10, 2019, Buhl sent an e-mail to Plaintiff Shan falsely accusing Folium and Shan of, among other things, being "aware of Craig Brand your general counsel['s] attempt to hire a person for a murder for hire against Ryan Lewis in August 2018 with an offer to pay the person $100k"; having falsified reports to regulators; and having "had pregnant women have to go to the hospital because of the lack of compliance in disposing of chemicals."  Each one of these statements (and many others contained in Buhl's outrageous

email) were and are completely false.  Plaintiffs are emphatically <u>not</u> aware of any criminal act on the part of Brand, nor do they believe Brand hired or attempted to hire anyone to murder Lewis, or anyone else for that matter.  Plaintiffs have not falsified reports to regulators.  To the best of Plaintiffs' knowledge, Plaintiffs have been and are in compliance with all requisite rules and regulations for the disposal of chemicals, and are not aware of any "pregnant women hav[ing] to go to the hospital" as a result of Plaintiffs' disposal of chemicals.  This e-mail is just one particularly egregious example of Buhl's shocking and offensive behavior and sheer contempt for Plaintiffs.

48.     On or about October 15, 2019, Buhl sent a text message to Robert Ivey, a Folium employee, falsely stating: "Robert please give me a call.  I am reporting a story on Folium.  I need your response to statements made by staff that you worked with Brad Jones to bring in marijuana to extract from California."  Mr. Ivey responded to Buhl that her allegations were false and defamatory *per se*.  Buhl responded to Ivey's denial, stating: "Which lawyer wrote that for you?  Are you worried if Kash is arrested or charged by regulators that he will blame you?"  Mr. Ivey was never involved in the interstate trafficking of marijuana.  Buhl's outrageous statements regarding potential criminal liability are plainly intended to instill fear in Plaintiffs' employees without any regard for truth or decency, much less journalistic integrity.  As is evident from this chronological recitation of Buhl's statements, her defamatory attacks were becoming increasingly aggressive and extreme.

49.     On or about October 16, 2019, Buhl sent a text message to Jenna Knapp, Executive Vice President of Operations for Folium, stating: "Jenna I am going to report you ordered the graphic designer to change COA third party reports to change the thc level.  Let me know if you want to comment."  Ms. Knapp never ordered anyone to change COAs.  Buhl's

repeated and harassing accusations of wrongdoing to several Folium employees are outrageous and false.

50.     On or about October 16, 2019, Buhl e-mailed Scott Dowty, Chief Executive Officer of Australis Capital Inc., stating: "The two [people] I spoke with at Folium say Kash lied in the press release [of April 3, 2019, available at https://www.biospace.com/article/releases/ folium-biosciences-to-power-hemp-industry-s-first-complete-financial-solutions-program/] with the intention to create buzz so that the $AUSA stock price would go up."  Buhl further asked Dowty: "Can you provide comment on alleged inaccurate statements made in the April 3rd press release."  Australis invested $3,000,000 in Folium in a private offering investment in January of 2019.  Buhl's statements are malicious and false statements of fact that expose Plaintiffs to contempt in the minds of a substantial number of the community, and indeed are defamatory *per se* because they suggest that Shan was involved in criminal conduct.  Shan did not lie in the April 3, 2019 press release.  Buhl's statements demonstrate an evil motive to damage and destroy Plaintiffs' reputation.

51.     After the filing of the initial complaint in this Action on October 30, 2019, Buhl escalated her campaign to defame Plaintiffs.

52.     On or about October 30, 2019, Buhl called Jay Weightman, a fire department consultant for Folium, asking him about a fire and explosion at a previous Folium location.  Buhl told Weightman that the Colorado Springs Fire Department had open cases against Folium.  The fire department, however, did not at that time and does not currently have any open cases against Folium to the best of its knowledge.

53.     On or about October 30, 2019, Buhl called and e-mailed Rick Barry (the retired Hall of Fame basketball player who is a Folium customer and has referred business to Folium),

asking him if he was aware of OSHA violations on the part of Folium, and sending Mr. Barry

links to publicly-available documents related to OSHA inspections of Folium facilities.  Buhl

suggested that Folium routinely disregarded requisite rules and regulations, but the relevant

records show that Folium worked to comply with the applicable rules and regulations and took

timely corrective action when an inspection raised a limited number of violations and that

Folium paid relatively insignificant fines to close all open matters.  Buhl's statements were

directed at a Folium customer and were intended to damage Plaintiffs' relationships with their

important business partners.

54.     On or about November 1, 2019, Buhl posted the following message on her

Twitter account: "If you are a hemp farmer who has ever worked with Folium Biosciences and

not had your order paid I would like to speak with you.  DM me or teribuhl@gmail.com."

55.     **The Second Article.**  On or about November 8, 2019, Buhl published a second,

"follow-up" article on Cannabis Law Report's website, at https://cannabislaw.report/folium-

biosciences-colorado-stock-hiking-cutting-corners-sidestepping-regulatory-requirements-strong-

arm-tactics/, that has further damaged and defamed Plaintiffs and jeopardized their substantial

investments in the Folium business.  With the sensational, misleading, and false headline:

"Folium Biosciences Colorado: Stock hiking, cutting corners, sidestepping regulatory

requirements & strong arm tactics," the article purports to set forth Buhl's months of "research"

regarding Folium and Shan.  However, the second article is simply a continuation of Buhl's

persistent efforts to improperly smear and disparage Plaintiffs' reputations and business.

56.     The second article contains various falsehoods, including, but not limited to,

allegations that Shan issued a purportedly false press release to increase the stock price of

Australis; that Folium knowingly purchased and used "hot product"; that Folium altered

Certificate of Analysis (COA) reports; that Folium hid chemicals from inspectors (at its own

extraction facility); that Folium leveled false charges against employees who made complaints in

order to terminate such employees; and that Folium attempted to hire someone to kill former

Folium executive Ryan Lewis.  Each one of these statements, and the article as a whole, are

false, misleading, and defamatory in nature.

      57.    Specifically, in the second article, Buhl published the following false and

misleading accusations, among others, about Plaintiffs:

a. "Folium Biosciences Colorado: Stock hiking, cutting corners, sidestepping regulatory requirements & strong arm tactics";

b. "According to two former Folium employees internal rumblings at the company this past spring were that Kashif Shan had stock or discounted warrants in Australis and the press release Folium wrote was used in the hopes of moving the stock price up";

c. "According to over half a dozen former Folium employees, interviewed by CLR, mis-truths are simply party [sic] of the company's corporate culture";

d. Describing Folium as "Cutting Corners, Sidestepping Regulatory Requirements";

e. Accusing Folium of "buying hot hemp, meaning cannabis with THC above the Federal mandated minimum %, from a California grower in August 2018 when Colorado hemp supply was unavailable to Folium because of strained relationships with local growers who had experienced slow or non-payment for goods by Folium, according to two former Folium employees," and subsequently stating "[b]ut then, according to two former Folium sales employees familiar with the deal, the cannabis was used anyways to process CBD oil and subsequently sold";

f. "After Cannabis Law Report published our first story on the alleged problems at Folium , a former graphic designer at the company, based out of the Colorado Springs office came forward to inform CLR that they, as a designer employed at the company, had been asked to doctor Certificate of Analysis reports by Folium management";

g. "Former Folium employees have also informed CLR that fudged CBD or THC levels were the least of their worries when it came to the company's day to day operations";

> h. "[A] former driver for the company said … that Folium's Rocky Ford location was used to house the chemicals the company wanted to hide from inspectors";
>
> i. Stating that Folium uses "Strong Arm Tactics to Silence Whistleblowers and Competitors";
>
> j. "Over a half a dozen former Folium staff … said false internal charges, from being accused of taking a range of illegal drugs at work, threatening other employees during arguments, and sharing trade craft with competitors, were made up about them when Folium management wished to move them out of the company's employ after they made specific complaints about operational matters";
>
> k. "According to three individuals who either worked at the company or were employed on a consulting basis, they all confirm that they heard first hand from a Folium executive of an attempt in the summer of 2018 to hire a person and pay a six figure sum to kill Mr[.] [Ryan] Lewis."

Each of the foregoing statements is false, misleading, and/or defamatory. Folium did not engage in any "stock hiking," did not knowingly cut corners or sidestep regulatory requirements, and has not engaged in "strong arm tactics."  Shan did not have any stock or warrants in Australis and did not attempt to manipulate the stock of that company.  Folium does not promote or support a culture of "mis-truths."  Folium did not knowingly buy "hot" hemp and in the one instance that it is aware of when the product it purchased tested above expected levels (even though the seller of the product certified that it was under the relevant limits), the company actually quarantined and/or destroyed that product, notified the seller that its product did not conform to specifications, and did not knowingly sell product that was outside of the relevant guidelines.  In any event, to the extent Folium was able to remove THC so that the resulting product tested within the relevant guidelines, there would have been nothing untoward about selling such product and the insinuation otherwise reflects (at best) a misunderstanding of how hemp is grown and processed in the industry.  Folium is not aware of Jenna Knapp, Executive Vice President of Operations of Folium, or any other current member of its management actually

asking a designer to falsify Certificates of Analysis. Folium did not have a policy or practice of "fudging" CBD or THC levels. Folium did not use its Rocky Ford location to house chemicals that it wanted to hide from inspectors; to the contrary, that location was used by Folium in the normal course of its business to process CBD oil. And, to the extent former employees of Folium were accused of misconduct, Folium understood at the relevant times that those employees were engaged in misconduct and did not fabricate or falsify any such charges.

58.     Upon information and belief, the unnamed disgruntled former Folium employees cited in the second article are in many instances simply projecting their own bad acts and criminal behavior onto Folium and accusing Plaintiffs of acts that the former employees themselves committed. Indeed, a former employee openly discussed a planned murder for hire of Craig Brand. Upon learning this information, it was Folium that reported the situation to the Colorado Springs Police Department. *See* Colorado Springs Police Department Report No. 18-32107; Call For Service No. 18373075. Upon information and belief, it was actually Folium's former General Counsel, not Lewis, who was the potential victim of this threatened act, and the police investigation referenced in the second article was actually opened because of ***Plaintiffs'*** report to the police. Buhl's attempts to paint Plaintiffs as the villains behind a "murder for hire" plot is thus both ironic and also false, misleading, and defamatory.

59.     Like the first article published by Buhl, the second article contains multiple fabricated and false statements in an attempt to damage Plaintiffs' reputations and their business. The second article accuses Plaintiffs of serious violations of their professional duties in a manner that is obviously incompatible with the proper conduct of their business, trade, or office, and is thus defamatory *per se*. In publishing these statements, Buhl acted in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination

ordinarily followed by responsible persons.  She clearly knew the negative impact these statements would have on Plaintiffs' reputations and their business.

60.     At the time she published the second defamatory article on the Cannabis Law Report website, Buhl did not have reliable evidence to corroborate any of the false allegations of the persons cited in the article that she allegedly consulted.  Upon information and belief, the sources of information cited in the second article were disgruntled former employees who Buhl knew, or should have known and recklessly disregarded, were inherently untrustworthy because these former employees were terminated from Folium for cause.  Without objective external evidence to corroborate the allegations she intended to include in the article, Buhl's reliance on these unnamed "sources" was reckless and irresponsible and contrary to basic journalistic standards.  Buhl knew or should have known that the allegations in the second article were false and defamatory.

61.     At the very least, Buhl had an obligation, to properly verify the information before publishing any further articles or other statements.  Unfortunately, Buhl, in response to Plaintiffs' well-founded complaint, continued her false and misleading accusations and published further lies and disparaging comments to members of Plaintiffs' community.

62.     On or about November 8, 2019, Buhl falsely commented on Twitter that: "My new Story on how US cbd wholesale company with Australis investment makes Canntrust look innocent including a murder 4 hire attempt."



*See* https://twitter.com/buhlreports/status/1192765043370274816.  This statement is both false and misleading.  Plaintiffs were never involved in any murder for hire attempt against Ryan Lewis or anyone else for that matter.  Instead, as explained above, former General Counsel Craig Brand was the planned victim of a "murder for hire" attempt.  *See* Colorado Springs Police Department Report No. 18-32107; Call For Service No. 18373075.

63.    On or about November 8, 2019, Buhl falsely commented on Twitter that: "Folium Biosciences a large wholesale producer of CDB [sic] has run rampant over Hemp & state licensing regs which included alleged illegal transportation of chemicals & buying 'hot' flower that was allegedly turned into CBD."



*See* https://twitter.com/buhlreports/status/1192824338648567808.  This publicly disseminated

statement was intended to disparage Plaintiffs and is false and/or misleading at best.  Folium has

not "run rampant" over state licensing regulations, and it did not knowingly violate any such

regulations.

64.     On or about November 8, 2019, Buhl falsely commented on Twitter that: "Today

I rpt how Folium leadership allegedly attempted a murder 4 hire after an exec left to start his own

CBD company."



*See* https://twitter.com/buhlreports/status/1192828401557680128.  This statement is false.  As previously stated, Plaintiffs did not "attempt" any  murder for hire against Mr. Lewis or anyone else, and Buhl's use of the modifier "allegedly" does not undo the outrageous implication that her statement has some basis in fact.  The only murder for hire attempt of which Plaintiffs are aware was allegedly directed against Craig Brand.

65.     On or about November 8, 2019, Buhl falsely commented on Twitter that: "Most alarming part of my investigation in @Foliumbiosci was how little Co Springs fire and police or Co dept of Ag has done to curb execs behavior & lack of willingness to follow regs."

27



*See* https://twitter.com/buhlreports/status/1192833646564200448.  This statement is misleading and false because it suggests that Folium's executives were not willing to follow regulations and that their behavior needed to be "curb[ed]."  In fact, Folium strives to comply with requisite rules and regulations in a fast-growing industry, and, if and when any violations have been identified, Folium has timely taken corrective action regardless of how minor the infraction or small the penalty may have been.  Folium has worked with and continues to work with the Colorado Springs Fire Department and Colorado Springs Police Department to insure that its facilities are properly inspected and that known incidents are properly reported to authorities.

66.     On or about November 8, 2019, Buhl falsely commented on Twitter that: "I report: How Scott Dowty of $AUSA Australis & a private wholesale cbd company made an alleged false press release that led to stock run up."  This statement is false as the referenced press release was not false, and the intentionally malicious implication (based on fabrication and improper insinuation) that Plaintiffs engaged in any attempt to improperly manipulate the price of a publicly traded security is outrageous and defamatory *per se*.

67.     On or about November 12, 2019, Buhl posted the following statement on Twitter: "Thank you to all the former employees or customers of @Foliumbiosci who have come forward after our story investigating massive misconduct at this CBD wholeseller [sic].  We want to hear from anyone who's worked with Folium."  This publicly-disseminated statement contains the misleading assumption that former employees have actually come forward to Buhl with credible information of misconduct, when in reality, Buhl has acted in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible persons.

68.     On or about November 12, 2019, Buhl posted the following statement on Twitter: "After a CLR story published last month about owner, Kashif Shan, further irregularities and questions about Folium's products and operational management have come to light."  Once again, this publicly disseminated statement is intended to create the impression that there exist "further irregularities and questions" about Plaintiffs which Buhl has not yet menacingly disseminated, despite the lack of any stated basis for such "irregularities and questions" that "have come to light."  If Buhl had any real journalistic integrity, she would refrain from disseminating such empty insinuations.  Statements like these make apparent her intention to simply and repeatedly smear, damage and disparage Plaintiffs.

69.    On or about November 13, 2019, Buhl posted the following statement on Twitter: "Would love to hear from other @Foliumbiosci clients who buy their whole sale cbd products that are also asking for an audit of the Colorado Springs processing facility."  This statement is misleading.  Audits, pursuant to the Federal Food, Drug, and Cosmetic Act and accompanying regulations, are routinely conducted by Folium in its normal course of business for Good Manufacturing Practice (GMP) compliance.  That is, audits – whether initiated by Folium or at the request of a customer – are regularly conducted to confirm that Folium products are manufactured in a way that is safe for human consumption.  Audits in this industry are not indicative of any impropriety or suspicion of wrongdoing.  For Buhl to suggest otherwise is simply misleading.

70.    On or about November 15, 2019, Buhl posted the following statement on Twitter: "Looking to speak with @Foliumbiosci employees that were promised monthly bonuses off company profits by Kashif Shan but never got the amount promised."  Once again, Buhl's statement, contains misleading assumptions regarding aggrieved employees and "promised" amounts.  While many Folium employees are enrolled in the company's profit sharing program, the amount actually distributed changes depending upon profits and the number of employees for any relevant period.  No promises were made by Shan or Folium regarding a set monthly bonus amount.  For Buhl to suggest otherwise is simply false.

71.    Upon information and belief, Buhl was aware that the above defamatory statements were false when she made them.  At the very least, these statements were made in reckless or conscious disregard of the truth.

72.    Buhl has routinely disregarded and continues to blatantly disregard and run roughshod over matters of public record.  She is maliciously defaming Plaintiffs for, upon

information and belief, the sole purposes of increasing traffic to her articles, garnering money for herself or her accomplices, assisting the Colorado Litigants and/or potentially assisting short sellers of Folium's investors.  Buhl, in connection with her accomplices, is generating false and misleading information, harassing Folium's employees and customers, and creating sensational, click-bait headlines and deceitful Tweets all in an effort to negatively affect Folium's business and revenues, decrease the valuation of Folium, and interfere with the potential acquisition and purchase of Folium.

73.     As a direct and proximate result of the foregoing defamatory statements and tortious actions of Buhl, Plaintiffs have sustained, and will continue to sustain, immediate and irreparable harm and injury, including, but not limited to, damage to reputation, loss of profits, loss of business relations with existing and future business prospects, and loss of competitive business advantage, opportunity, and/or expectancy.  These actions also threaten to destroy the livelihoods of Folium's over-200 employees.  The irreparable harm to Plaintiffs will continue, without any adequate remedy at law, unless and until Buhl's unlawful conduct is enjoined by this Court.

74.     As such, Folium and Shan now bring claims against Buhl for defamation *per se*, tortious interference with prospective economic advantage, and injurious falsehood, and seek injunctive relief and monetary damages.

**COUNT I
(DEFAMATION *PER SE*)**

75.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 74 above as if fully stated herein.

76.     Buhl has intentionally made knowingly false and defamatory statements of fact about Plaintiffs to third parties that were reasonably understood by those who read or heard them

to be statements of fact regarding Plaintiffs' operation of Folium business.

77.    Specifically, Buhl's statements include, among others and without limitation, the above-described false assertions that:

     a.  "Shan has allegedly made comments to staff that 'his wife is good for hiding money'";

     b.  "[Folium's] wholesale CBD products … caused death or severe sickness in some dogs";

     c.   "[Folium] w[as] not vertically integrated";

     d.  Folium falsified COAs;

     e.  Shan "lied in the [April 3, 2019] press release with the intention to create buzz so that the $AUSA stock price would go up";

     f.  "[M]is-truths are simply party [sic] of [Folium's] corporate culture";

     g.   "Folium's Rocky Ford location was used to house the chemicals the company wanted to hide from inspectors";

     h.  Folium "attempt[ed] in the summer of 2018 to hire a person and pay a six figure sum to kill Mr[.] [Ryan] Lewis"

(collectively, the "Buhl Statements").

78.    The Buhl Statements are all false, misleading, and defamatory in that they falsely imply that Plaintiffs are engaged in crimes of moral turpitude and matters incompatible with the proper conduct of Plaintiffs' business, trade, or office; falsely imply that Plaintiffs' products are unsafe and that Plaintiffs have not disclosed this information to its customers; falsely imply that Plaintiffs have misrepresented their business structure and ownership; falsely imply that Plaintiffs have knowingly engaged in various regulatory violations; and falsely imply that Plaintiffs have committed criminal violations of securities laws, and attempted murder.

79.    Buhl communicated these lies (the Buhl Statements) to Folium's customers and the public at large even though, upon information and belief, she knew them to be untrue when she made the statements.  In publishing the Buhl Statements, Buhl acted maliciously,

oppressively, with an improper and evil motive, and if not with knowledge that the Buhl Statements were false, then in reckless or conscious disregard of the truth (including publicly available information that Buhl made a deliberate decision not to acquire because that information might confirm the probable falsity of the defamatory Buhl Statements).

80.    Plaintiffs in no way approved the false and defamatory statements published by Buhl.

81.    Buhl disseminated and published these false and defamatory statements on, at a minimum, the Cannabis Law Report website, her website, her Twitter account, and even Folium employees' social media accounts in a manner that achieved widespread exposure to a global internet audience.

82.    The Buhl Statements were malicious and false statements of fact that expose Plaintiffs to hatred, contempt, or aversion, or induce an evil or unsavory opinion of Plaintiffs in the minds of a substantial number of the community and the cannabis industry.

83.    In publishing the Buhl Statements, Buhl was not acting in the role of the "independent press" or as a "professional journalist."  Indeed, in publishing the Buhl Statements, Buhl acted in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible persons.

84.    The Buhl Statements were made with the intent to harm and out of hostility towards Plaintiffs.

85.    The Buhl Statements are defamatory *per se* because Buhl has charged Plaintiffs with serious criminal offenses.

86.    Moreover, the Buhl Statements are defamatory *per se* in that they tend to impugn Plaintiffs' reputations in their business, trade, and profession, and indeed have harmed Plaintiffs

in their business, trade, and profession.

87.     As a result of the false and defamatory statements published by Buhl, Plaintiffs'
relationships with their customers, marketing partners, employees, and vendors have been
undermined and damaged.

88.     As a result of the false and defamatory statements published by Buhl, Plaintiffs
have been forced to make an expenditure of money to remedy the defamation.

89.     Plaintiff Shan has suffered and will continue to suffer non-economic damages,
such as personal humiliation, emotional distress, and damage to his reputation and standing in
the community and cannabis industry.

90.     Plaintiff Folium has suffered and will continue to suffer non-economic damages,
such as damage to its business reputation and standing in the community and cannabis industry.

91.     Buhl made the Buhl Statements of and concerning Plaintiffs with the specific
intent to cause harm to Plaintiffs, and did so willfully and with malice, and, thus, Plaintiffs are
entitled to, in addition to other damages and amounts, an award of punitive and exemplary
damages.

92.     As a direct and proximate cause of the false and defamatory statements, Plaintiffs
have suffered, and continue to suffer, substantial damages, including, without limitation in the
reasonable expectation loss of current and/or future clients, and, accordingly, Plaintiffs are
entitled to damages in an amount to be determined at trial, but not less than $10,000,000.

## COUNT II
### (TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE)

93.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1
through 92 above as if fully stated herein.

94.     As set forth above, prior to Buhl's interference, Plaintiffs had strong business

relationships with its customers, including, among others, customers of its wholesale CBD products for animal health, such as (but not limited to), Holistic Hound.

95.     By Buhl's deliberate interference and communications specifically targeted at Plaintiffs' customers, Buhl acted solely for the purpose of injuring Plaintiffs and Plaintiffs' relationships with their important customers.  Those relationships have been damaged by the doubt and fear that Buhl's interference has sewn in Plaintiffs' customers about the safety of Plaintiffs' products and about the professional and ethical conduct of Plaintiffs' business. Indeed, Folium has had to field numerous calls from prospective customers to address concerns arising from Buhl's articles, which such customers believe to be true.

96.     As set forth above, prior to Buhl's interference, certain companies were contemplating the potential acquisition and purchase of Folium.

97.     Upon information and belief, Buhl, aware that certain companies intended to acquire Folium, interfered with Plaintiffs' prospective business relations with those companies by making false allegations against and about Plaintiffs and by employing other improper and wrongful means to damage Plaintiffs' business.

98.     Upon information and belief, Buhl, in interfering with Plaintiffs' prospective business relations with certain individuals and companies, acted solely for the purpose of injuring Plaintiffs.

99.     The contracts with such companies, which were lost and/or devalued as a result of Buhl's misconduct, would have been worth millions of dollars each, depending upon the contractual counterparty or lost business opportunity.  But for Buhl's interference, those companies would have done business with Plaintiffs and/or would have continued doing business with Plaintiffs.

100.    Upon information and belief, Buhl has used improper and wrongful means, and acted solely for the purpose of injuring Plaintiffs, with respect to other, currently unknown prospective clients of Plaintiffs, and have thereby caused Plaintiffs to lose accounts, contracts, business, business relationships, and/or revenue that Plaintiffs would have otherwise obtained.

101.    As a direct and proximate cause of the foregoing, Plaintiffs have suffered, and continue to suffer, substantial damages, and, accordingly, Plaintiffs are entitled to damages in an amount to be determined at trial, but not less than $10,000,000.

**COUNT III**
**(INJURIOUS FALSEHOOD)**

102.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 101 above as if fully stated herein.

103.    Buhl has intentionally made knowingly false statements of fact about Plaintiffs to third parties.  Such statements include, without limitation, the Buhl Statements identified above.

104.    The Buhl Statements are all false, misleading, and defamatory.

105.    Buhl communicated such lies to Folium's customers and the public at large even though, upon information and belief, she knew them to be untrue when she made the statements.

106.    Upon information and belief, Buhl made the aforementioned false statements maliciously and with the intent to cause harm to Plaintiffs.

107.    Buhl's misconduct has, at a minimum, caused Plaintiffs to suffer pecuniary losses with respect to the loss of business with certain companies and the decreased valuation of the company, each of which would have been worth millions of dollars (depending upon the specific lost opportunity), and has further caused Plaintiffs as-yet unknown pecuniary losses along with damage to Plaintiffs' reputation.

108.    Buhl's misconduct has, at a minimum, caused Plaintiffs to suffer pecuniary losses

with respect to the money they have had to spend to counteract Buhl's defamatory statements and damaging actions, including without limitation, the fees paid to their attorneys to prepare this complaint and litigate this action against Buhl, so that Plaintiffs' reputations can be defended and restored.

109.    As a direct and proximate cause of the foregoing, Plaintiffs have suffered, and continue to suffer, substantial damages, and, accordingly, Plaintiffs are entitled to damages in an amount to be determined at trial, but not less than $10,000,000.

**DEFENDANT'S CONDUCT WARRANTS PUNITIVE AND EXEMPLARY DAMAGES**

110.    Buhl's conduct warrants the imposition of punitive damages.  The factors justifying punitive damages include, at a minimum, the following:

    a.  Buhl specifically targeted Plaintiffs in order to grab headlines and gain notoriety;

    b.  Buhl ignored or recklessly disregarded publicly available information rebutting her false assertions;

    c.  Buhl published the statements to Plaintiffs' customers and investors with knowledge that Plaintiffs were unaware of at least some of the allegations;

    d.  Buhl acted with knowledge that the statements in the articles and the statements published to third parties were false, or with reckless disregard for the statements' truth or falsity; and

    e.  Buhl deliberately posted comments about the articles on other websites after it was published, including on her Twitter account.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs Folium and Shan respectfully request that the Court enter an order and judgment in favor of them against Defendant Buhl, containing the following relief:

a.     Permanently enjoining Buhl, and her partners, agents and employees, and any and all other persons in active concert or participation with her, and any and all other persons, corporations, or other entities acting under the supervision, direction, control, or on behalf of any of the foregoing from engaging in any further acts of defamation or injurious falsehood against Plaintiffs or tortious interference with any existing or prospective customer or business relation of Plaintiffs.

b.     Awarding Plaintiffs damages in an amount to be proven at trial, but no less than $10,000,000, to compensate Plaintiffs for harm to their professional reputation and all monetary losses they have suffered;

c.     Awarding Plaintiffs punitive and exemplary damages, in an amount to be proven at trial;

d.     Awarding Plaintiffs interest in an amount according to law;

e.     Requiring Buhl to pay Plaintiffs their costs and expenses in this action, including attorneys' fees, costs, and disbursements; and

f.     Granting Plaintiffs such other and further relief at law or in equity as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs Folium and Shan hereby demand a trial by jury in this action on all claims so triable.

Dated: New York, New York
        November 22, 2019

Respectfully submitted,

**ROBINS KAPLAN LLP**


 */s/ Reena Jain*
Craig Weiner
Ofer Reger
Reena Jain
399 Park Avenue, Suite 3600
New York, New York 10022
Tel.: (212) 980-7400
Fax: (212) 980-7499
CWeiner@RobinsKaplan.com
OReger@RobinsKaplan.com
RJain@RobinsKaplan.com

*Attorneys for Plaintiffs Whole Hemp*
*Company LLC d/b/a Folium Biosciences*
*and Kashif Shan*

## **VERIFICATION**

I, Kashif Shan, on behalf of myself and Whole Hemp Company LLC d/b/a Folium

Biosciences ("Folium"), verify under penalty of perjury that the factual statements in this First

Amended Verified Complaint concerning myself and Folium are true and correct to my

knowledge, except as to those matters therein stated to be alleged upon information and belief,

and as to those matters, I believe them to be true.

Executed this 22nd day of November, 2019.

_____

Kashif Shan
Chief Executive Officer and Founder of Folium