**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------- X

WHOLE HEMP COMPANY LLC d/b/a    :
FOLIUM BIOSCIENCES and KASHIF SHAN,              Case No.: 1:19-cv-10073-VSB
    :

          Plaintiffs,

    :

     v.

    :

TERI BUHL,

    :

          Defendant.

-------------------------------------- X

## PLAINTIFFS' OPPOSITION TO DEFENDANT TERI BUHL'S MOTION TO DISMISS AND/OR MOTION TO STRIKE

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ....................................................................................................... 2

ARGUMENT ........................................................................................................................... 6

    I.     BUHL'S MOTION TO DISMISS SHOULD BE DENIED ........................... 6

         A.    LEGAL STANDARD................................................................... 6

         B.    COUNT I PROPERLY ALLEGES A CLAIM FOR
              DEFAMATION *PER SE* ........................................................... 7

             1.    Plaintiffs Plead that Buhl's Defamatory Statements Are "Of
                 and Concerning" Plaintiffs.............................................. 8

             2.    Plaintiffs Plead that Buhl Published Her Defamatory
                 Statements .................................................................... 11

             3.    Plaintiffs Plead that Buhl Possesses the Requisite Level of
                 Fault for Her Defamatory Statements ........................... 12

             4.    Plaintiffs Plead that Buhl's Defamatory Statements Are
                 False ............................................................................. 13

             5.    Plaintiffs Sufficiently Plead Per Se Actionability....................... 14

         C.    COUNT II PROPERLY ALLEGES A CLAIM FOR TORTIOUS
              INTERFERENCE WITH PROSPECTIVE ECONOMIC
              ADVANTAGE ......................................................................... 14

         D.    COUNT III PROPERLY ALLEGES A CLAIM FOR INJURIOUS
              FALSEHOOD........................................................................... 16

         E.    BUHL'S ARGUMENTS ARE WITHOUT MERIT ............................ 17

             1.    The Amended Complaint Is Not "Vague and Ambiguous"......... 17

             2.    The Publications Are Cited and Detailed in the Amended
                 Complaint..................................................................... 18

             3.    No "Journalistic" Privilege Applies............................... 19

                  a.    The New York Shield Law Is Not a Basis to
                      Dismiss the Amended Complaint .................................... 20

                  b.    The Fair Report Privilege Is Not a Basis to Dismiss
                      the Amended Complaint ................................................ 20

                  c.    The Neutral Reportage Privilege Is Not a Basis to
                      Dismiss the Amended Complaint .................................... 21

    II.    BUHL'S MOTION TO STRIKE SHOULD BE DENIED ............................ 22

         A.    LEGAL STANDARD................................................................. 22

B.    PARAGRAPHS 2, 10-12, AND 16-23 ARE RELEVANT TO
PLAINTIFF'S CLAIMS, AND BUHL HAS FAILED TO
DEMONSTRATE ANY PREJUDICE .................................................... 23

**CONCLUSION** ..................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alianza Dominicana, Inc. v. Luna*,
    229 A.D.2d 328 (1st Dept. 1996)............................................................9

*Antares Mgmt. LLC v. Galt Glob. Capital, Inc.*,
    No. 12-CV-6075, 2013 WL 1209799 (S.D.N.Y. Mar. 22, 2013).........................................16

*Arista Records LLC v. Doe 3*,
    604 F.3d 110 (2d Cir. 2010)..............................................................18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................7

*Atl. Recording Corp. v. Project Playlist, Inc.*,
    603 F. Supp. 2d 690 (S.D.N.Y. 2009)...................................................19

*In re Beacon Assocs. Litig.*,
    745 F. Supp. 2d 386 (S.D.N.Y. 2010)....................................................7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................6

*Biro v. Condé Nast*,
    883 F. Supp. 2d 441 (S.D.N.Y. 2012)...................................................9

*Bouveng v. NYG Capital LLC*,
    175 F. Supp. 3d 280 (S.D.N.Y. 2016)..................................................14

*Church of Scientology Int'l v. Time Warner, Inc.*,
    806 F. Supp. 1157 (S.D.N.Y. 1992)......................................................7

*Condit v. Dunne*,
    317 F. Supp. 2d 344 (S.D.N.Y. 2004)...................................................9

*Cty. of Suffolk v. Simpson*,
    No. 05-CV-0715, 2005 WL 8159886 (E.D.N.Y. Dec. 12, 2005)............................6

*Davis v. Boeheim*,
    24 N.Y.3d 262 (2014)..................................................................8, 14

*DiBella v. Hopkins*,
    187 F. Supp. 2d 192 (S.D.N.Y. 2002)..................................................8, 13

*Dunn v. Gelardi*,
    59 A.D.3d 385 (2d Dept. 2009) ...............................................................22

*Elias v. Rolling Stone LLC*,
    872 F.3d 97 (2d Cir. 2017)......................................................................11

*Faiveley Transp. USA, Inc. v. Wabtec Corp.*,
    758 F. Supp. 2d 211 (S.D.N.Y. 2010)......................................................15

*Forschner Group v. B-Line A.G.*,
    943 F. Supp. 287 (S.D.N.Y. 1996)...........................................................25

*Friedman v. Bloomberg L.P.*,
    884 F.3d 83 (2d Cir. 2017)......................................................................21

*Fry v. McCall*,
    945 F. Supp. 655 (S.D.N.Y. 1996)...........................................................25

*Goldman v. Reddington*,
    No. 18-CV-3662, 2019 WL 4736803 (E.D.N.Y. Sept. 27, 2019) .........10, 11, 12, 14

*Greenberg v. CBS, Inc.*,
    69 A.D.2d 693 (2d Dept. 1979) ...............................................................20

*Hunter v. Palisades Acquisition XVI, LLC*,
    No. 16 CIV. 8779, 2017 WL 5513636 (S.D.N.Y. Nov. 16, 2017) .........24

*IMG Fragrance Brands, LLC v. Houbigant, Inc.*,
    No. 09 Civ. 3655, 2009 WL 5088750 (S.D.N.Y. Dec. 18, 2009)...........25

*Lasky v. Am. Broad. Cos., Inc.*,
    631 F. Supp. 962 (S.D.N.Y. 1986)......................................................21, 22

*Leadsinger, Inc. v. Cole*,
    No. 05 Civ. 5606 (HBP), 2006 WL 2320544 (S.D.N.Y. Aug. 10, 2006).........15, 17

*Lentlie v. Egan*,
    61 N.Y.2d 874 (1984) .............................................................................11

*Lipsky v. Commonwealth United Corp.*,
    551 F.2d 887 (2d Cir. 1976)....................................................................23

*Metrokane, Inc. v. Wine Enthusiast*,
    160 F. Supp. 2d 633 (S.D.N.Y. 2001)..................................................22, 24

*Mitre Sports Int'l Ltd. v. Home Box Office, Inc.*,
    22 F. Supp. 3d 240 (S.D.N.Y. 2014).......................................................12

*In re OSG Sec. Litig.*,
  12 F. Supp. 3d 619 (S.D.N.Y. 2014)......................................................................23

*Palin v. New York Times Co.*,
  940 F.3d 804 (2d Cir. 2019)..........................................................................7, 12

*Pasternack v. Shrader*,
  863 F.3d 162 (2d Cir. 2017)................................................................................26

*Pisani v. Staten Island Univ. Hosp.*,
  No. 06-CV-1016, 2008 WL 1771922 (E.D.N.Y. Apr. 15, 2008) ........................12

*Roe v. City of New York*,
  151 F.Supp.2d 495 (S.D.N.Y. 2001)..................................................................25

*Sell It Soc., LLC v. Acumen Brands, Inc.*,
  No. 14 CIV 3491, 2015 WL 1345927 (S.D.N.Y. Mar. 20, 2015) ..............7, 13, 16

*Sharon v. Time, Inc.*,
  599 F. Supp. 538 (S.D.N.Y. 1984)......................................................................20

*Silsdorf v. Levine*,
  59 N.Y.2d 8 (1983) .............................................................................................10

*SMJ Grp., Inc. v. 417 Lafayette Rest. LLC*,
  No. 06 CIV 1774, 2006 WL 2516519 (S.D.N.Y. Aug. 30, 2006) ........................16

*Stega v. New York Downtown Hosp.*,
  31 N.Y.3d 661 (2018) ..........................................................................................13

*Swain v. Brookdale Sr. Living*,
  No. 08-CV-702S, 2011 WL 1213600 (W.D.N.Y. Mar. 31, 2011) ....................7, 19

*Takio v. Whole Hemp Company LLC et al.*,
  Case No. 2019-CV-31992 (Colo. Dist. Ct., El Paso Cty) ....................................21

*Thomas H. v. Paul B.*,
  18 N.Y.3d 580 (2012) ...........................................................................................9

*Wohl v. Blair & Co.*,
  50 F.R.D. 89 (S.D.N.Y. 1970) .......................................................................22, 23

**Statutes**

N.Y. Civ. Rights L. § 74 .......................................................................................21

N.Y. Civ. Rights L. § 79-h....................................................................................20

**Other Authorities**

Fed. R. Civ. P. 8 ...................................................................................................................7, 19

Fed. R. Civ. P. 12(b)(6) ..............................................................................................................6

Fed. R. Civ. P. 12(f) ............................................................................................................22, 25

Fed. R. Civ. P. 15(a)(2) ............................................................................................................25

Fed. R. Civ. P. 19 .......................................................................................................................18

Fed. R. Evid. 405(b) ..................................................................................................................24

Plaintiffs Whole Hemp Company LLC d/b/a Folium Biosciences ("Folium") and Kashif Shan ("Shan") (collectively, "Plaintiffs"), by and through their undersigned counsel, respectfully submit this memorandum of law in opposition to the motion to dismiss and/or strike (Dkt. No. 14) ("Motion" or "Mot.") filed by *pro se* defendant Teri Buhl ("Buhl" or "Defendant").

## PRELIMINARY STATEMENT

Defendant Teri Buhl has been engaged in an aggressive, sustained campaign of public attacks against Plaintiffs' private business for almost six months. Buhl is a purported "investigative" "freelance journalist" who has targeted Plaintiffs with a barrage of false allegations in a series of articles published online and a number of statements on social media which have damaged and which continue to damage Plaintiffs' business and reputations. Despite continuing to publish defamatory articles and social media posts about Plaintiffs, Buhl now seeks to dismiss the Amended Complaint in its entirety or, in the alternative, to strike certain paragraphs containing background information. Buhl's muddled attempts to delay and/or excuse her destructive actions should not be sanctioned by this Court; her motion has no merit and should be denied in its entirety.

Plaintiffs sufficiently plead claims for defamation *per se*, tortious interference with prospective economic advantage, and injurious falsehood against Buhl with abundant facts and the detailed specific language of many defamatory and injurious statements. This Court need look no further than the four corners of the Amended Complaint to conclude that these claims are properly pleaded. Buhl's arguments otherwise are without merit. She argues that the Amended Complaint is "vague and ambiguous" and fails to specify various words and phrases, but she concentrates almost exclusively on introductory paragraphs and ignores the specific allegations included in the body of the Amended Complaint. Buhl also takes issue with the fact that her own

1

publications are not attached to the pleading. But the Amended Complaint cites to two specific articles on the website http://cannabislaw.report, and includes titles, URLs, and quotations; it cites to numerous Twitter posts from @buhlreports, and includes screenshots, URLs, and quotations; and it cites to various other communications, and includes dates, recipients, and the specific contents of these communications. Buhl argues that she is simply doing "her job as an investigative reporter" and, as such, she appears to claim some type of privilege with respect to the defamation *per se* and other claims. Although Buhl fails to identify what specific privilege applies, no statutory or common law privilege afforded to journalists excuses or protects her defamatory statements, particularly where, as here, her statements were made with actual malice and this action is in its earliest stage.

The facts set forth in the Amended Complaint, and particularly the background paragraphs which Buhl seeks to strike, are relevant and not prejudicial. Paragraphs 2 and 10-12 set forth the factual background relating to Buhl and her prior bad acts, and are relevant to Buhl's claim that she is a legitimate reporter, to Plaintiffs' allegations of actual malice and punitive damages, and to Buhl's defense of truth. Paragraphs 16-23 set forth factual background relating to Folium and Shan and their business, and are relevant to Plaintiffs' allegations of presumed and actual damages for all three causes of action, as well as Plaintiffs' reputations. That Buhl is a *pro se* defendant and a purported "journalist" should have no bearing on this Court allowing Plaintiffs' claims to proceed. Buhl's status does not protect her from her own intentional torts.

**STATEMENT OF FACTS**

Folium Biosciences: An Industry Innovator

Folium is the largest known vertically-integrated producer, manufacturer, and global distributor of hemp-derived THC-free hemp oil and cannabinoids ("CBD") in North America.

2

First Amended Verified Complaint ("Amended Complaint" or "FAC") (Dkt. No. 8) at ¶ 16. The company is a business-to-business, bulk, and wholesale supplier of hemp-derived THC free (0.0%) hemp oil, water-soluble technology, and CBD products for human wellness and animal health. *Id.* Folium has over 300,000 sq. ft. of manufacturing space in southern Colorado, which supports processing, extraction, and purification operations, and currently employs over 200 people. *Id.* ¶ 19. Shan is the Chief Executive Officer and Founder of Folium. *Id.* ¶ 9.

Folium is fully licensed and registered with the Colorado Department of Agriculture, and all of its phytocannabinoid-rich hemp is grown in compliance with the landmark Agricultural Improvement Act of 2018, also known as the 2018 Farm Bill. *Id.* ¶ 17. The company is believed to be the world's first hemp company issued a Certificate of Health and Free Sale and a Manufactured Food Establishment License by the Colorado Department of Public Health & Environment, certifying its THC free (0.0%) (non-detectable THC) products meet the requirements for human consumption as well as legal distribution. *Id.* ¶ 18. As an industry leader in manufacturing, processing, and distributing phytocannabinoid-rich bulk hemp oil and related food products, Folium has attracted prospective outside buyers for the company. *Id.* ¶ 23.

<u>Buhl's Ongoing Campaign to Defame Folium and Shan</u>

Teri Buhl's campaign of defamation and disparagement against Plaintiffs began on or about August 29, 2019, when an article she wrote was published on Cannabis Law Report's website. *Id.* ¶¶ 3-4, 29-37. In the article, Buhl defamed Shan by, among other things, falsely claiming that Shan made statements to Folium staff that "his wife is good for hiding money." *Id.* ¶¶ 3-4, 31. Although the article purports to cite an unnamed source for this inflammatory allegation, and describes other allegations from a complaint filed against Folium by a former employee, the article goes well beyond a fair description of the *Takio* complaint's allegations,

and suggests that the Plaintiffs are engaged in other misconduct. *See id.* ¶¶ 29-37. Following publication of this August 2019 article, Buhl continued her campaign to falsely accuse Plaintiffs of various unlawful acts, publishing false or intentionally misleading statements on her social media pages, and repeating fabrications by unnamed former employees of Folium in harassing calls and communications to a number of current Folium employees and customers, all under the guise of working on additional "stories" about Plaintiffs. *See id.* ¶¶ 4, 38-70. After this action was initiated, Buhl continued to publish defamatory articles and social media posts about Plaintiffs. *See id.* ¶¶ 51-70.

The Amended Complaint sets forth in detail only a fraction of the false statements that Buhl has made to defame Plaintiffs. *See id.* ¶¶ 3-4, 29-70. For this Court's convenience, the articles and social media posts which are the source of such false statements are filed herewith. *See* Exs. 2-8 to February 10, 2020 Declaration of Reena Jain, Esq. ("Jain Decl."), filed herewith. Indeed, Buhl's efforts have continued even after the filing of the Amended Complaint, with Buhl publishing a third defamatory article about Plaintiffs on December 13, 2019, and further defamatory social media posts as recently as January 23, 2020. *See* Exs. 9-29 to Jain Decl.

<u>The Procedural History of this Action</u>

Plaintiffs filed the original Verified Complaint in this action on October 30, 2019, alleging claims for defamation *per se*, tortious interference with prospective economic advantage and injurious falsehood. Dkt. No. 1. Buhl was served on November 4, 2019. Dkt. No. 7. On November 20, 2019, Buhl emailed Plaintiffs' counsel to ask if Plaintiffs would consent to a 60-day extension of time for Buhl to answer or otherwise respond to the Complaint. Ex. 1 to Jain Decl. That same day, Plaintiffs' counsel informed Buhl that Plaintiffs intended to file an amended complaint and thus Buhl would not need an extension of time. *Id.* On November 22,

2019, Plaintiffs filed the Amended Complaint against Buhl, alleging the same three legal claims, but, *inter alia*, supplementing the pleadings with new statements made by Buhl after the filing of the initial complaint. *See* Dkt. No. 8. On November 26, 2019, Plaintiffs requested that Buhl waive service of summons as to the Amended Complaint, and Buhl agreed to do so. Dkt. No. 11. As such, Buhl's time to answer or otherwise respond to the Amended Complaint was 60 days from the time of the request – *i.e.*, January 27, 2020. *Id.*

On December 18, 2019, Buhl asked if Plaintiffs would consent to a 30-day extension. Ex. 1 to Jain Decl. Plaintiffs' counsel responded that same day as follows:

> As indicated on the Waiver of the Service of Summons (see attached), the deadline for you to answer or move in response to the First Amended Verified Complaint is 60 days from the date we sent our request to waive service (November 26, 2019) – i.e., January 27, 2020. While we have no objection to you seeking pro bono counsel or any other counsel of your choice, <u>you still have several weeks before the deadline, and our clients would prefer not to unnecessarily delay the litigation</u>. Accordingly, our clients will not consent to a 30 day extension <u>at this time</u>.
>
> It is our understanding that you are currently not represented by counsel. Should you obtain counsel, please let us know right away. Thank you.

*Id.* (emphases added). Plaintiffs' counsel did not hear from Buhl until over a month later when she filed the Motion on January 27, 2020.

In the Motion, Buhl accuses Plaintiffs' counsel of "unprofessionalism" and alleges that she told Plaintiffs' counsel that she needed time "so that lawyers can return from vacations and [she] can properly continue to interview law firms and file grants for legal defense funding." Mot. at 1. But Buhl did not mention anything about vacations or interviewing law firms, and she did not reach out to Plaintiffs' counsel in the weeks leading up to her response deadline (at any time after December 18, 2019). The email quoted above belies Buhl's claim of any "unprofessionalism" on the part of Plaintiffs' counsel, who simply stated that Plaintiffs would not consent to an extension <u>at this time</u> on December 18 and urged Buhl to alert them

immediately if she secured counsel. Ex. 1 to Jain Decl. Buhl has been aware of the pending litigation against her since, at the latest, October 31, 2019, almost <u>three months</u> before she responded to the Amended Complaint. Ex. 30 to Jain Decl. In the interim, Buhl continued to defame Plaintiffs repeatedly, publishing defamatory articles on November 8, 2019 and December 13, 2019 and a number of defamatory social media posts, including as recently as January 23, 2020. *See* Jain Decl. Exs. 3-29. In light of Buhl's ongoing actions, Plaintiffs are well within their rights to insist on this case proceeding as expeditiously as possible.

## ARGUMENT

As an initial matter, while Plaintiffs acknowledge that *pro se* papers generally must be construed liberally, "*pro se* status does not absolve a party from compliance with relevant procedural and substantive rules of law." *Cty. of Suffolk v. Simpson*, No. 05-CV-0715, 2005 WL 8159886, at *2 (E.D.N.Y. Dec. 12, 2005). Here, Buhl's motion amounts to little more than disagreement with the facts alleged in the complaint and thus her motion must be denied. *See id.* To the extent the Motion might be interpreted to argue that Plaintiffs have not adequately stated their claims, or to suggest certain privilege-related arguments, Plaintiffs address those arguments below, but Buhl's status as a *pro se* defendant should not alter the fundamental premise that the facts alleged in the Amended Complaint are to be read in the light most favorable to Plaintiffs and accepted as true. *Id.*

## I.   BUHL'S MOTION TO DISMISS SHOULD BE DENIED

### A.   Legal Standard

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a plaintiff must only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is considered plausible on its face "when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This Court must liberally construe the Amended Complaint, accepting the factual allegations as true, and "draw all reasonable inferences in plaintiff's favor." *Church of Scientology Int'l v. Time Warner, Inc.*, 806 F. Supp. 1157, 1159 (S.D.N.Y. 1992). In determining the adequacy of a complaint, the court may consider, in addition to the facts stated on the face of the complaint, documents appended to the complaint or incorporated therein by reference, matters of which judicial notice may be taken, and documents upon which the plaintiff relied in bringing suit and which are integral to the complaint. *In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 403 (S.D.N.Y. 2010).

### B.     Count I Properly Alleges a Claim for Defamation *Per Se*

"Under New York law a defamation plaintiff must establish five elements: (1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." *Palin v. New York Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019). It is well-settled that defamation claims are governed by the liberal pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. *See id.* at 810; *Swain v. Brookdale Sr. Living*, No. 08-CV-702S, 2011 WL 1213600, at *1 (W.D.N.Y. Mar. 31, 2011). "Under this standard, the pleading need only afford the defendant sufficient notice of the communications complained of to enable him to defend himself." *Swain*, 2011 WL 1213600, at *1; *see also Sell It Soc., LLC v. Acumen Brands, Inc.*, No. 14 CIV. 3491, 2015 WL 1345927, at *7 (S.D.N.Y. Mar. 20, 2015) ("Plaintiff is not required to allege the specific time, place and manner of the statement where, as here, plaintiff … was not present when the allegedly defamatory words were spoken.") (internal quotations and citation

omitted). Plaintiffs more than sufficiently plead each and every element of the defamation standard.

### 1.      *Plaintiffs Plead that Buhl's Defamatory Statements Are "Of and Concerning" Plaintiffs*

The Amended Complaint is replete with quotations of, detailed citations to, and even screenshots of statements concerning Plaintiffs. Many of these statements, which accuse Plaintiffs of serious crimes, pervasive dishonesty, and a number of other reputation- and business-damaging falsities, are plainly defamatory. *See*, *e.g.*, FAC ¶ 4; *DiBella v. Hopkins*, 187 F. Supp. 2d 192, 201 (S.D.N.Y. 2002) ("Words that affect a person in his profession, business, or trade by imputing to him fraud or dishonesty are defamatory."); *Davis v. Boeheim*, 24 N.Y.3d 262, 268 (2014) ("[A] false statement that tends to expose a person to public contempt, hatred, ridicule, aversion or disgrace constitutes defamation.") (internal quotation and citation omitted). In determining the sufficiency of a defamation pleading, a court considers "'whether the contested statements are reasonably susceptible of a defamatory connotation.'" *Davis*, 24 N.Y.3d at 268 (quoting *Armstrong v Simon & Schuster*, 85 N.Y.2d 373, 380 (1995)).

Because falsity is a necessary element of a defamation claim, a statement must generally allege facts which are capable of being proven false in order to be considered defamatory. *Id.* While statements of pure opinion may not be the subject of a defamation claim, "an opinion that implies that it is based upon facts which justify the opinion but are unknown to those reading or hearing it, … is a 'mixed opinion' and is actionable." *Id.* at 269 (internal quotation and citation omitted). Qualifiers like "alleged" or "I believe" are insufficient to transform actionable facts into nonactionable opinions if, in context, "a reasonable reader could view [the] statements as supported by undisclosed facts." *Id.* at 272-73. Moreover, "the fact that a particular accusation originated with a different source does not automatically furnish a license for others to repeat it

without regard to its accuracy or defamatory character." *Thomas H. v. Paul B.*, 18 N.Y.3d 580, 586 (2012). *See also Biro v. Condé Nast*, 883 F. Supp. 2d 441, 461 (S.D.N.Y. 2012) ("It is well settled that Defendants cannot escape liability simply because they are conveying someone else's defamatory statements without adopting those viewpoints as their own.").[1]

The Amended Complaint specifies a number of false statements of fact made by Buhl, which she knew or should have known to be false, about Folium and Shan, including, among others, the following:

- In her August 29, 2019 article on Cannabis Law report's website, Buhl wrote: "According to a person who has worked with the company Shan has allegedly made comments to staff that 'his wife is good for hiding money'" (FAC ¶¶ 4a, 31);

- On September 22, 2019, Buhl left a voicemail for a customer of Folium (Heidi Hill of Holistic Hound) stating: "two former employees … said you had bought some of [Folium's] wholesale CBD products and that it had caused death or severe sickness in some dogs that had bought your product" (*id.* ¶¶ 4b, 42);

- On October 10, 2019, Buhl posted on Twitter: "My story research shows they [Folium] were not vertically integrated" (*id.* ¶¶ 4c, 44);

- On October 10, 2019, Buhl called an employee of Holistic Hound, Duncan Schmidt, a customer of Folium and alleged that a product containing Folium's product was responsible for the death of a dog and that Folium falsified Certificates of Analysis (*id.* ¶¶ 4d, 45);

- On October 16, 2019, Buhl emailed Scott Dowty, CEO of Australis Capital Inc. stating: "The two [people] I spoke with at Folium say Kash lied in [an April 3, 2019] press release with the intention to create buzz so that the $AUSA stock price would go up" (*id.* ¶¶ 4e, 50);

- In her November 8, 2019 article on Cannabis Law Report's website, Buhl wrote: "[A] former driver for the company said … that Folium's Rocky Ford location was used to house the chemicals the company wanted to hide

---

[1] *See also Condit v. Dunne*, 317 F. Supp. 2d 344, 364 (S.D.N.Y. 2004) (finding defendant not immune from slander suit although statements were "literally true because defendant clarifie[d] that he [was] merely retelling stories told to him" because "the stories themselves [were] false and defamatory"); *Alianza Dominicana, Inc. v. Luna*, 229 A.D.2d 328, 329 (1st Dept. 1996) (holding that statements may be defamatory "notwithstanding the cautionary language … such as 'they say' or 'rumor in the streets say'" where accusations would have been understood by a reasonable viewer to be assertions of provable fact).

from inspectors." (*id.* ¶¶ 4f, 57h); and

- On November 8, 2019, Buhl posted on Twitter "Today I rpt how Folium leadership allegedly attempted a murder 4 hire after an exec left to start his own CBD company" (*id.* ¶¶ 4i, 64)

(collectively, the "Buhl Statements").

Taking the words in each one of these statements in their ordinary meaning and in context, the above statements are more than susceptible to a defamatory connotation. They each identify a particular statement in a precisely defined context and allege facts. For instance, a reasonable reader of Buhl's August 29, 2019 article would conclude that Shan had made the statement that his "wife is good for hiding money," that Shan believed as much, and that Shan is dishonest in his business dealings. Similarly, Buhl's statements to Folium's customers about Folium products causing severe sickness or death of dogs are presented as statements of fact. *Id.* ¶¶ 42, 45. Buhl's statement about Folium not being vertically integrated is explicitly premised on her purported "research" which was not disclosed in her statement, and as the Amended Complaint pleads, this statement is false. *Id.* ¶ 44. Buhl's statements about Shan allegedly lying in a press release to manipulate the price of a publicly-traded stock and attempting a murder for hire both allege serious crimes and are thus plainly defamatory. *See id.* ¶¶ 50, 64; *Silsdorf v. Levine*, 59 N.Y.2d 8, 16 (1983) ("[A]lthough expressions of opinion are constitutionally protected, accusations of criminal or illegal activity, even in the form of opinion, are not.").

The fact that Buhl couched some of these defamatory statements as requests for comments on statements others made does not change their defamatory nature. "[I]t is widely recognized that one who republishes a libel is subject to liability just as if he had published it originally . . . ." *Goldman v. Reddington*, No. 18-CV-3662, 2019 WL 4736803, at *8 (E.D.N.Y. Sept. 27, 2019) (internal quotation and citation omitted).

There is no doubt that the Buhl Statements are "of and concerning" Plaintiffs. Buhl

10

repeatedly refers to both Folium and Shan by name (though Shan is often referred to by the nickname "Kash"). At other times Buhl refers to "Folium leadership" or a "Folium executive," which clearly includes Shan, the company's Chief Executive Officer. *See*, *e.g.*, FAC ¶¶ 57k, 64. This easily satisfies the first factor, which merely requires that "[t]he reading public acquainted with the parties and the subject would recognize the plaintiff as a person to whom the statement refers." *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104-05 (2d Cir. 2017) (internal quotation and citation omitted). Here, references to Folium generally are sufficient to defame Shan, its Founder and CEO. *See id.* at 108 ("[W]here a statement defames all members of a small group, the reference to the individual plaintiff reasonably follows from the statement.") (internal quotation and citation omitted).

### 2.   *Plaintiffs Plead that Buhl Published Her Defamatory Statements*

Each of the Buhl Statements (and many others specified in the Amended Complaint) were clearly published. Most were published either in online articles, *see*, *e.g.*, FAC ¶¶ 29-36, 55-60, or on Buhl's public Twitter profile, *see, e.g.*, *id.* ¶¶ 38-40, 44, 54, 62-70. The posting of defamatory statements online, where the public can access those statements, is sufficient for the publication element of a defamation claim. *See*, *e.g.*, *Goldman*, 2019 WL 4736803, at *4 ("Defamatory words expressed in writing are classified as libel, and this generally includes social media and text messages."). Other statements were published when Buhl made them directly to a third party. *See, e.g.*, FAC ¶¶ 41-43, 45-50, 52-53; *see also Lentlie v. Egan*, 61 N.Y.2d 874, 876 (1984) ("the law of defamation requires but one communication to a single person"). Notably, Buhl made certain of her defamatory statements to Folium's customers (*e.g.*, Holistic Hound, Rick Barry), investors (*e.g.*, Australis), and other business relations (*e.g.*, Jay Weightman). *See* FAC ¶¶ 22, 42, 45, 50, 52-53.

3.       ***Plaintiffs Plead that Buhl Possesses the Requisite Level of Fault for Her Defamatory Statements***

The level of fault required for a defamation claim "varies depending on the status of the parties and the content of the statement." *Goldman*, 2019 WL 4736803, at *6.

> Where the plaintiff is a private individual, but the content of the statement is "arguably within the sphere of legitimate public concern," the defendant will not be liable unless she "acted in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties." *Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*, 194 F. Supp. 3d 263, 287 (S.D.N.Y. 2016). If the plaintiff is a private individual and the statement does not concern the public, the gross irresponsibility standard does not apply, and negligence will suffice.

*Id.* (further citation omitted). Here, Plaintiffs are private figures, and the Buhl Statements do not concern the public.[2] Accordingly, the negligence standard applies, and the Amended Complaint amply satisfies the standard with allegations that Buhl knowingly or recklessly made false and defamatory statements of fact.

In the alternative, to the extent this Court finds that this dispute raises a matter of public concern, the Amended Complaint contains allegations that Buhl acted in a grossly irresponsible manner or with actual malice. *See, e.g.,* FAC ¶¶ 4, 32, 59, 67, 83. In these circumstances, courts in the Second Circuit examine, *inter alia*, whether a defendant follows typical professional practices, such as editorial review; whether the defendant had any reason to doubt the veracity of the defamatory statements; and whether the defendant could easily verify the truth. *See Pisani v.*

---

[2] "[I]n determining whether a plaintiff is a public figure, New York courts examine whether plaintiff had taken affirmative steps to attract personal attention or had strived to achieve a measure of public acclaim." *Mitre Sports Int'l Ltd. v. Home Box Office, Inc.*, 22 F. Supp. 3d 240, 251 (S.D.N.Y. 2014). Plaintiffs do not meet this standard, and Buhl does not argue otherwise. While Plaintiffs are not public figures, they nevertheless plead that Buhl's statements were made "willfully and with malice." FAC ¶ 91; *see also Palin*, 940 F.3d at 809 ("[A] public figure plaintiff must prove that an allegedly libelous statement was made with actual malice, that is, made with knowledge that it was false or with reckless disregard of whether it was false or not.") (internal quotation and citations omitted). Plaintiffs more than plausibly allege that Buhl recklessly disregarded a number of facts which show actual malice. *See, e.g.,* FAC ¶¶ 35 (Buhl recklessly ignored timeline and information in Folium's federal court complaint), 36 (Buhl recklessly disregarded that former employees had been terminated for cause), 58, 62 (citing police report which Buhl failed to obtain or review); *see also id.* at ¶¶ 47-49 (describing Buhl's hostile emails and texts to Folium employees).

*Staten Island Univ. Hosp.*, No. 06-CV-1016, 2008 WL 1771922, at *16 (E.D.N.Y. Apr. 15, 2008). Plaintiffs allege that Buhl acted "without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible persons, she recklessly ignored readily available public information," and knowingly made defamatory statements about Plaintiff. *See*, *e.g.*, FAC ¶¶ 4, 29-37, 48, 55-61,72, 79. She repeatedly ignored publicly-available information that refuted her statements. *See id.* at ¶¶ 29, 35, 79. This is sufficient to meet the legal standard, particularly given the fact that Plaintiffs have not yet had the benefit of discovery in this case. While it is clear that Buhl failed to properly verify most of the facts she "reported," (as they are false), the details of what steps she took (or did not take) are peculiarly within her sole possession and can only be determined through discovery.

### 4.     *Plaintiffs Plead that Buhl's Defamatory Statements Are False*

Plaintiffs plead that each of the Buhl Statements are false. *See*, *e.g.*, FAC ¶¶ 32, 35, 41, 42, 44, 47, 49, 57, 64, 70. While Buhl does not explicitly argue that any of her defamatory statements were truthful, she suggests as much (*see* Mot. at 6), but any such truth defense is premature. *See DiBella*, 187 F. Supp. 2d at 200; *Stega v. New York Downtown Hosp.*, 31 N.Y.3d 661, 674 (2018) ("[O]n a pre-answer motion to dismiss a defendant will prevail on this ground only if the statement's truth may be established from the complaint alone."). The Court must accept Plaintiffs' well-pleaded allegations as true. But even if the Court examines the truth of the statements, the allegations of falsity are more than sufficient to withstand a motion to dismiss. *See Sell It Soc.*, 2015 WL 1345927, at *6 ("[A] statement may be considered false if it would have a different effect on the mind of the reader from that which the pleaded truth would have produced.") (internal quotation and citation omitted).[3]

---

[3] Furthermore, as discussed above, the Buhl Statements are actionable false statements of fact, and not opinions. While Buhl tried to qualify certain of her statements and purported to cite unnamed sources, a mixed statement of

### 5.    *Plaintiffs Sufficiently Plead Per Se Actionability*

"The New York Court of Appeals has recognized four categories of statements as defamatory *per se*," including, among others, "those that accuse the plaintiff of a serious crime [and] those that tend to injure another in his or her trade, business or profession." *Bouveng v. NYG Capital LLC*, 175 F. Supp. 3d 280, 318-19 (S.D.N.Y. 2016) (internal quotation and citation omitted). The Buhl Statements endanger Plaintiffs' business and professional reputation and accuse Plaintiffs of serious crimes. Most egregiously, Buhl accused Plaintiffs of attempting to hire someone to commit murder – undoubtedly a "serious crime." FAC ¶¶ 47, 56-57, 62, 64. She also accused Plaintiffs of other serious crimes, including, among others, lying to affect a company's stock price (*id.* ¶¶ 50, 56-57, 66), and illegally trafficking in marijuana (*id.* ¶ 48).[4]

Such statements, as well as the other Buhl Statements, also injure Folium and its CEO in their business and professional reputations. The Buhl Statements, for example, have caused customers and other business relations to incorrectly believe that the company's products are dangerous. *See, e.g.*, *id.* ¶¶ 42 (falsely stating that "[Folium's] wholesale CBD products [] had caused death or severe sickness in some dogs"), 95 (describing calls from concerned customers). The Buhl Statements have caused significant damage to Plaintiffs' business and reputation. *See, e.g.*, *id.* ¶¶ 32, 42, 45, 49, 50, 53, 68, 95, 107.

### C.    Count II Properly Alleges a Claim for Tortious Interference With Prospective Economic Advantage

To establish a claim for tortious interference with prospective economic advantage, a plaintiff must plead and show that:

_____

fact and opinion may be the subject of a defamation claim where the opinion "implies that it is based upon facts which justify the opinion but are unknown to those reading or hearing it." *Davis*, 24 N.Y.3d at 269.

[4] "A crime is 'serious ... if it is (a) punishable by imprisonment in a state or federal institution, or (b) regarded by public opinion as involving moral turpitude.'" *Goldman*, 2019 WL 4736803, at *4 (citation omitted). The above-mentioned crimes alleged against Plaintiffs undoubtedly qualify.

> (1) they "had a [particular and existing] business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) that the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship."

*Faiveley Transp. USA, Inc. v. Wabtec Corp.*, 758 F. Supp. 2d 211, 221-22 (S.D.N.Y. 2010) (quoting *Carvel Corp. v. Noonan*, 350 F.3d 6, 17 (2d Cir. 2003)). "[I]in the context of a tortious interference with prospective economic advantage claim, plaintiff is not required at the pleading stage to identify with sufficient specificity the prospective contractual relationships in question …. It would be unreasonable to require more specific pleadings prior to discovery." *Leadsinger, Inc. v. Cole*, No. 05 Civ. 5606 (HBP), 2006 WL 2320544, at *13 (S.D.N.Y. Aug. 10, 2006) (internal quotation and citation omitted). Plaintiffs sufficiently plead this claim.

Plaintiffs plead various business relationships with customers and investors, including specific relationships with Holistic Hound and Rick Barry (customers) and Australis (an investor). *See, e.g.*, FAC ¶¶ 4, 22, 42, 45, 50, 53, 94. Plaintiffs also plead that certain companies were contemplating the potential acquisition and purchase of Folium. *Id.* ¶¶ 23, 96. Buhl obviously had knowledge of these relationships as she contacted Holistic Hound multiple times to falsely inform its founder and employee that Folium products had caused death and severe sickness in dogs and that Folium allegedly falsified Certificates of Analysis. *See id.* ¶¶ 42, 45. She also contacted Rick Barry (a Folium customer and source of referral business) and the CEO of Australis (a significant investor in Folium) to falsely or misleadingly allege that Folium had committed various civil and criminal violations. *See id.* ¶¶ 50, 53. The only reasonable inference to be made from these specifically-described contacts (particularly in the absence of discovery), is that Buhl intended to interfere with Folium's relationships with its customers and investors. Buhl's defamatory statements provide the requisite "improper means." *See Antares Mgmt. LLC v. Galt Glob. Capital, Inc.*, No. 12-CV-6075, 2013 WL 1209799, at *13-14 (S.D.N.Y. Mar. 22,

2013) (finding defamation *per se* claim constitutes the requisite "wrongful means" necessary to sustain a tortious interference claim); *see also Sell It Soc.*, 2015 WL 1345927, at *8 (same). Finally, Plaintiffs plead that Buhl's false statements have caused injury to their relationships with prospective and actual customers and investors, as well as prospective outside buyers for the company.[5] *See* FAC ¶¶ 4, 42, 45, 50, 53, 66, 95, 97-101. Because Plaintiffs allege facts, which if true, would satisfy all four elements of the claim, Count II for tortious interference with prospective economic advantage should not be dismissed.

### D.    Count III Properly Alleges a Claim for Injurious Falsehood

To state a claim for injurious falsehood, a plaintiff must sufficiently plead that "(1) defendants knowingly published false and derogatory matter regarding plaintiffs' business, and (2) that defendants' purpose was to interfere with plaintiffs' relations with others, to plaintiffs' detriment." *SMJ Grp., Inc. v. 417 Lafayette Rest. LLC*, No. 06 CIV. 1774, 2006 WL 2516519, at *5 (S.D.N.Y. Aug. 30, 2006). Plaintiffs sufficiently allege a claim of injurious falsehood.

The Amended Complaint is replete with references to Buhl's knowing publication of false and derogatory statements about Folium and Shan to third parties, as discussed fully in Section I(B), *supra*. Among others, Buhl knowingly made false statements that "[Folium's] wholesale CBD products … caused death or severe sickness in some dogs"; that Folium was not vertically integrated; that Folium falsified Certificates of Analysis; that Shan "lied in the [April 3, 2019] press release with the intention to create buzz so that $AUSA stock prices would go up"; that "Folium's Rocky Ford location was used to house the chemicals the company wanted

---

[5] As an apparent defense to Plaintiffs' allegations of damage, Buhl argues that "Plaintiffs, just within the last few weeks, have been putting out press releases informing the world that they have reached a merger agreement, reverse merger with the publicly trading company Australis Capital." Mot. at 5. Even if this Court takes judicial notice of any such press releases, Buhl's factual arguments may not be considered on a motion to dismiss and the press releases do not establish as a matter of law that Plaintiffs have not suffered damages, whether to the value of the Folium business as a going concern or otherwise.

to hide from inspectors"; and that Folium had engaged in "a murder 4 hire attempt." FAC ¶¶ 4, 42, 44-45, 50, 56-62; *see also Leadsinger*, 2006 WL 2320544, at *14 ("Although the injurious falsehood section of the complaint does not set forth [defendant's] putatively false statements *ver batim* [sic], all of the allegations made in the prior paragraphs have been reasserted in plaintiff's injurious falsehood claim.") (denying motion to dismiss).

Moreover, Plaintiffs' well-pleaded allegations make clear that Buhl intentionally published and widely disseminated false statements on http://cannabislaw.report, her Twitter account (@buhlreports), and otherwise on the Internet to interfere with Plaintiffs' business, including their relationships with prospective and actual customers and investors and, as well as prospective outside buyers for the company. *See*, *e.g.*, FAC ¶¶ 28, 97, 107-09. Plaintiffs further allege, upon information and belief, that Buhl is working with (or being backed by) disgruntled former employees of Folium to defame Plaintiffs in order to negatively affect Folium's business and revenues, decrease the valuation of Folium, and/or interfere with the potential acquisition and purchase of Folium. *Id.* ¶¶ 24-28. Plaintiffs sufficiently and properly plead a claim for injurious falsehood against Buhl.

### E.   Buhl's Arguments Are Without Merit

#### 1.   *The Amended Complaint Is Not "Vague and Ambiguous"*

Buhl's primary argument appears to be that the complaint's allegations are vague, but she bizarrely focuses on just the introductory paragraphs in complaining that there are insufficient details about a number of words and phrases. *See* Mot. at 3-6 (arguing that Plaintiffs have not described, *inter alia*, "unknown financial backers," "damages," "disparaging," "various unlawful acts," "business practices," "financial dealings," "publications," "false statements," "disgruntled employees", "customers", "products", "accomplices"). Of course, the very information that Buhl complains about is set forth throughout the Amended Complaint beyond the first paragraph. *See,*

*e.g.*, FAC ¶¶ 4 (concerning false statements), 16-23 (concerning Plaintiffs' business practices), 24-28 (concerning accomplices and disgruntled employees), 29-72 (concerning disparaging, various unlawful acts, financial dealings, publications, false statements, customers, products, etc.), and 73, 87-92, 100-01, 107-09 (concerning damages).

To the extent certain facts have not been pled (*e.g.*, the identity of the "unknown financial backers"), the case law is clear that "[t]he *Twombly* plausibility standard, which applies to all civil actions, does not prevent a plaintiff from pleading facts alleged 'upon information and belief'' where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (internal quotations and citations omitted). Here, where Plaintiffs have provided plausible grounds to infer that Buhl is receiving financial support from unknown parties (*see, e.g.*, FAC ¶¶ 1, 10, 24-28), and that information is solely within Buhl's possession, Plaintiffs should not be required to plead any specific evidence. In any event, Plaintiffs' claims are against Buhl alone and for the reasons set forth above, those claims survive the Motion to Dismiss without pleading the identity of Buhl's unknown financial backers. While Buhl suggests that such third parties may be necessary to the action (*see* Mot. at 3), she does not offer any particular rationale (other than factually disputing the existence of such backers), and there is no reason that this Court cannot afford complete relief among the existing parties, as Buhl's actions stand on their own. *See* Fed. R. Civ. P. 19.

### 2.   *The Publications Are Cited and Detailed in the Amended Complaint*

Buhl argues that she is "le[ft] … to guess as to what plaintiff is truly complaining of" because "plaintiff has failed to attach the publications to the complaint." Mot. at 2. This argument is baseless. The Amended Complaint specifies the contents of each publication and statement by Buhl, citing two specific articles <u>written by Buhl</u>, and provides the title, date and

URLs where the articles are published, as well as the specific language in the articles that is

defamatory. *See* FAC ¶¶ 29-37, 55-61. The Amended Complaint also cites to numerous Tweets

posted on Buhl's Twitter account (@buhlreports). Nine of the Tweets include the date and

language from the posts (*id.* ¶¶ 38-40, 54, 66-70), and five of the Tweets include the date of the

posts, the URLs where the posts are published, screenshots of the posts, and language from the

posts (*id.* ¶¶ 44, 62-65). Other complained-of communications by Buhl are also sufficiently

identified, with references to dates, to whom the statements were made, and the content of the

statements. *See, e.g.*, *id.* ¶¶ 41-43, 45-50, 52-53. This is more than adequate to put Buhl on notice

of her own publications/statements and the basis of Plaintiffs' claims. *See* Fed. R. Civ. P. 8(a)(2).

All these statements are within Buhl's knowledge and possession, the articles and social media

posts are publicly available and are filed herewith (*see* Exs. 2-8 to Jain Decl.), or included as

screenshots in the pleading. The Court may consider the full articles as effectively incorporated

by reference into the Amended Complaint because Plaintiffs quote the defamatory language that

is central to Plaintiffs' claims. *See Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d

690, 693 n.3 (S.D.N.Y. 2009). The Amended Complaint need only afford Buhl sufficient notice

of the communications complained of to enable her to defend herself. *See Swain*, 2011 WL

1213600, at *1. As demonstrated above, Plaintiffs far exceed this low threshold.

### 3.      *No "Journalistic" Privilege Applies*

While Buhl does not refer to any specific privilege doctrine by name, she suggests that

her status as an "investigative reporter" entitles her to some privilege or protection.[6] Plaintiffs

---

[6] In the Motion, Buhl argues: "All this reporter is doing is her job as an investigative reporter and if crimes are uncovered against the Plaintiffs then so be it. However, use of a lawsuit in the attempt to stop this reporter from engaging in her job and uncovering Wrongdoing is tantamount to the bringing of a false claim and mis-use of the legal proc[]ss [sic]." Mot. at 6. As Buhl is a *pro se* defendant, Plaintiffs liberally interpret her papers to potentially raise a number of potential privileges discussed above.

dispute that Buhl is a legitimate "journalist" or "investigative reporter" but, even if she could be so described, no such journalistic privilege applies and the Motion to Dismiss should be denied.

> a.       The New York Shield Law Is Not a Basis to Dismiss the Amended Complaint

The New York shield law (N.Y. Civ. Rights L. § 79-h) ("Shield Law") affords a privilege that prohibits holding a journalist in contempt for refusing to disclose their sources. The Shield Law has no application here at this pleading stage because Buhl is the only defendant – no claims have been alleged against her unidentified "sources" or any John or Jane Does. The Shield Law "does not establish an absolute right or grant journalists complete immunity from all legal consequences" of refusing to disclose evidence relating to a news source or otherwise. *Sharon v. Time, Inc.*, 599 F. Supp. 538, 582 (S.D.N.Y. 1984) (internal quotations and citation omitted). The Shield Law may serve as a shield with respect to a journalist's sources, but may not insulate a reporter's state of mind from scrutiny for purposes of a defamation claim. *See id.*

The relevant inquiry on this Motion is whether Plaintiffs have stated claims for relief. To the extent Buhl has a defense to some element of the defamation claim based on the Shield Law, that issue can be raised, if at all, during discovery or on summary judgment.[7] The identity of Buhl's alleged sources is irrelevant to whether Plaintiffs have properly stated their claims.

> b.       The Fair Report Privilege Is Not a Basis to Dismiss the Amended Complaint

The "fair report" privilege (N.Y. Civ. Rights L. § 74) protects the reporting of a plaintiff's publicly-stated legal position only where the report is a substantially accurate

---

[7] To the extent Buhl invokes this privilege in discovery, she cannot rely on any unnamed sources to establish lack of malice and truth as a defense to the claims against her. *See Greenberg v. CBS, Inc.*, 69 A.D.2d 693, 708-09 (2d Dept. 1979) (defendants were not permitted to rely on undisclosed sources and information for verification and then turn around and offer this verification as "proof" of their responsibility). Buhl cannot use the Shield Law as both a shield (for her sources) and a sword (to establish a defense against Plaintiffs' claims).

description of a plaintiff's position in a lawsuit. N.Y. Civ. Rights L. § 74 ("A civil action cannot be maintained … for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding."). This privilege does not apply here because Buhl's publications include statements that go well beyond the allegations contained in the complaint in *Takio v. Whole Hemp Company LLC et al.*, Case No. 2019-CV-31992 (Colo. Dist. Ct., El Paso Cty), which Buhl mentions in the August 29 article, and any other judicial or official proceedings. *See id.*; FAC ¶¶ 29-70. *See also Friedman v. Bloomberg L.P.*, 884 F.3d 83, 94-95 (2d Cir. 2017) (reversing dismissal where defamatory statement that plaintiff "had repeatedly tried to extort money" from his former employer was not a legal position taken in a case reported on by media defendant). Buhl's articles and statements include myriad references to sources and information that were not included in any filed complaint. *See*, *e.g.*, FAC ¶¶ 31, 42, 45.

c.    The Neutral Reportage Privilege Is Not a Basis to Dismiss the Amended Complaint

The neutral reportage privilege may apply "where there is an accurate and disinterested reporting of serious charges leveled by a responsible organization against a public figure under circumstances where a raging and newsworthy controversy exists." *Lasky v. Am. Broad. Cos., Inc.*, 631 F. Supp. 962, 971 (S.D.N.Y. 1986). "The privilege is a limited one." *Id*. at 970. It does not protect a "publisher who in fact espouses or concurs in the charges made by others, or who deliberately distorts these statements to launch a personal attack of his own on a public figure." *Id.* (internal quotation and citation omitted).

Buhl's defamatory statements enjoy no special immunity under this doctrine for a number of reasons. First, Buhl's statements cannot fairly be characterized as neutral. Buhl repeatedly made sensational accusations in her articles and tweets, and her tweets soliciting further sources make clear that she believed that Plaintiffs were involved in criminal or illegal activity. *See* FAC

¶¶ 29-70. Second, Buhl explicitly refers to herself as an "investigative reporter" and courts have routinely held "investigative reporting to be beyond the protection of the privilege." *Lasky*, 631 F. Supp. at 971 (citing *McManus v. Doubleday & Co., Inc.*, 513 F. Supp. 1383, 1391 (S.D.N.Y. 1981)). Third, the privilege is defeated by a showing of malice, *see Dunn v. Gelardi*, 59 A.D.3d 385, 386 (2d Dept. 2009), which Plaintiffs plead here. *See* FAC ¶ 91. Fourth, neither Shan nor Folium are public figures. Buhl elicited the statements in question and no newsworthy controversy raged around the statements until she published them. Despite Buhl's protest that "[a]ll this reporter is doing is her job as an investigative reporter" (Mot. at 6), the pleaded statements themselves make clear that Buhl is anything but a "neutral" reporter of information.

## II.   BUHL'S MOTION TO STRIKE SHOULD BE DENIED

### A.   Legal Standard

While Fed. R. Civ. P. 12(f) allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," it is well-established that "motions [to strike] are not viewed favorably, the general policy being against denying a party the opportunity to support his content in more depth at trial." *Wohl v. Blair & Co.*, 50 F.R.D. 89, 91 (S.D.N.Y. 1970). A movant "must demonstrate that no evidence in support of the allegation would be admissible, that the allegations have no bearing on the issues in the case, and that to permit the allegations to stand would result in prejudice to the movant." *Metrokane, Inc. v. Wine Enthusiast*, 160 F. Supp. 2d 633, 641-42 (S.D.N.Y. 2001) (internal quotation and citation omitted). "Motions to strike are disfavored and usually granted only for scandalous material." *Id.*

The Second Circuit has cautioned that the power to strike should be used sparingly, and that "courts should not tamper with the pleadings unless there is a strong reason for so doing." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976). When reviewing a

motion to strike, courts "view the pleading under attack most favorably to the pleader." *Wohl*, 50

F.R.D. at 91. "Unless the pleading is obviously insufficient as a matter of law, or the severity of

the prejudice outweighs the materiality of the allegation, it will not be stricken." *Id.*

Buhl has failed to meet this heavy burden or to make any showing that would warrant

striking any part of the Amended Complaint, let alone paragraphs 2, 10-12, and 16-23 which she

specifically mentions. *See* Mot. at 7-9. The Motion to Strike must be denied in its entirety.

### B.   Paragraphs 2, 10-12, and 16-23 are Relevant to Plaintiff's Claims, and Buhl Has Failed to Demonstrate Any Prejudice

The identified paragraphs set forth important factual background about Buhl and her prior

bad acts as well as Plaintiffs and their business. As such, these paragraphs are clearly relevant to

Plaintiffs' claims against Buhl as well as her articulated defenses.[8] Paragraphs 2 and 10-12 are

specifically about Buhl and, among other things, her reputation as a "journalist" and her well-

documented history of defamatory comments and character assassination. The information found

in these paragraphs comes from publicly available sources, including Buhl's own statements

from her website (http://www.teribuhl.com) and sworn declaration from a pending Southern

District of Florida case as well as various pleadings filed[9] and verdicts issued against her. *See*

FAC ¶¶ 2, 10-12. At a minimum, such information about Buhl is relevant and necessary to

Plaintiffs' allegations of actual malice (*id.* ¶ 91) and punitive damages (*id.* ¶ 110). *See, e.g.*,

*Hunter v. Palisades Acquisition XVI, LLC*, No. 16 CIV. 8779, 2017 WL 5513636, at *10

(S.D.N.Y. Nov. 16, 2017) (denying motion to strike where "[defendant's] knowledge of

---

[8] The Second Circuit has held that "neither a district court nor an appellate court should decide to strike a portion of the complaint - on the grounds that the material could not possibly be relevant - on the sterile field of the pleadings alone." *Lipsky*, 551 F.2d at 893.

[9] A complaint may reference allegations from a separate proceeding. *See In re OSG Sec. Litig.*, 12 F. Supp. 3d 619, 620-22 (S.D.N.Y. 2014) ("While allegations from another lawsuit are not evidence … plaintiffs need not provide admissible proof at [the pleadings] stage.").

allegations of impropriety … could inform whether or not their actions in this case were 'reckless' or 'willful,' as required for the award of punitive damages [p]laintiff seeks"). Buhl's pattern of conduct – behavior constituting repetitive, ongoing misconduct and reckless public statements – underscores the appropriateness of punitive damages here. *See* FAC ¶ 91.

Buhl has also affirmatively put her own reputation as a "journalist" at issue, necessitating the inclusion of these paragraphs. *See* Mot. at 3 ("I am a professional freelance journalist with an established byline in investigative journalism"), 8 (claiming that paragraphs 10-12 are "defamatory themselves"). *See also* Fed. R. Evid. 405(b) ("When a person's character or character trait is an essential element of a charge, claim, or defense, the character or trait may also be proved by relevant specific instances of the person's conduct."). Buhl's Motion also suggests that she is pursuing truth as a defense to Plaintiffs' defamation claim. *See* Mot. at 6 (arguing that she has "disclosed" and "uncovered" findings), 9 (arguing that Buhl was merely "attempting to learn truths"). In sum, Buhl's reputation for veracity is relevant to her defenses.

Paragraphs 16-23, on the other hand, do not even concern Buhl. These paragraphs are about Folium and Shan and their business and reputation, which are relevant and necessary elements of the pleaded claims. Plaintiffs' reputations in their business, trade, and profession must be pleaded for the defamation *per se* claim, and the remaining claims require Plaintiffs to show damage to their business and/or reputation. *See supra* §§ I(B)-I(D). "Paragraphs that identify plaintiff[s] and the market history … clearly bear on the overall issues of the case" and "such general background information is neither scandalous nor redundant." *Metrokane*, 160 F. Supp. 2d at 642; *see also Forschner Group v. B-Line A.G.*, 943 F. Supp. 287, 292 (S.D.N.Y. 1996) (denying motion to strike "background information on the parties, their business and their relationship to each other"). Buhl argues that these paragraphs are false, which Plaintiffs dispute,

but "the mere claim that an allegation may be false is insufficient to strike the offending content." *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, No. 09 Civ. 3655, 2009 WL 5088750, at *2 (S.D.N.Y. Dec. 18, 2009).

Buhl argues in conclusory fashion that paragraphs 2 and 10-12 are meant to create undue prejudice against her and have no bearing on Plaintiffs' claims. *See* Mot. at 7-8. But Buhl has failed to identify any prejudice that might result from the challenged language remaining in the FAC. Even assuming, *arguendo*, that these allegations could be prejudicial to Buhl due to the possibility that a jury could perceive her to be a serial defendant, these concerns are "better addressed through appropriate applications at a later stage in th[e] litigation." *Roe v. City of New York*, 151 F.Supp.2d 495, 511 (S.D.N.Y. 2001); *see also Fry v. McCall*, 945 F. Supp. 655, 668 (S.D.N.Y. 1996) ("If the defendants believe any of this material [subject to Rule 12(f) motion] is prejudicial and should not be put before the jury, they can make an appropriate motion at that time."). The allegations contained in paragraphs 2, 10-12, and 16-23 of the Amended Complaint are plainly relevant to Plaintiffs' claims and Buhl has failed to show that she is prejudiced by their inclusion in the Amended Complaint. The Court should thus deny the Motion to Strike.

## CONCLUSION

Based on the foregoing, this Court should deny Teri Buhl's Motion in its entirety. In the event the Court determines that any part of the Amended Complaint should be dismissed or stricken, Plaintiffs respectfully request leave to amend. *See* Fed. R. Civ. P. 15(a)(2).[10]

---

[10] Particularly where, as here, there has been no discovery, Buhl has not yet filed an Answer, an Initial Case Management Conference has not been scheduled, and Buhl will not be able to show undue prejudice or bad faith, leave to amend should be freely granted. *See*, *e.g.*, *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017).

Dated: New York, New York
        February 10, 2020

Respectfully submitted,

**ROBINS KAPLAN LLP**


*/s/ Reena Jain*
Craig Weiner
Ofer Reger
Reena Jain
Alexander D. Newman
399 Park Avenue, Suite 3600
New York, New York 10022
Tel.: (212) 980-7400
Fax: (212) 980-7499
CWeiner@RobinsKaplan.com
OReger@RobinsKaplan.com
RJain@RobinsKaplan.com
ANewman@RobinsKaplan.com

*Attorneys for Plaintiffs Whole Hemp*
*Company LLC d/b/a Folium Biosciences*
*and Kashif Shan*